**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

KAMAL KAYWAYKLA HALABY SHASH,

and

SHIREE GALLEGOS,

Plaintiffs

v.

CITY OF PUEBLO, a Municipality,

COLORADO STATE PATROL,

COLORADO DEPARTMENT OF REVENUE,
DIVISION OF MOTOR VEHICLES,

DEPUTY CHIEF JOHN DOE, City of Pueblo Police Officer,
a Supervisor in his individual and official capacity,

CORPORAL STEVEN VAUGHN, City of Pueblo Police Officer,
a Supervisor in his individual and official capacity,

TROOPER JASON CHAVEZ, Colorado State Trooper,
in his individual and official capacity

TROOPER J.D. FOSTER, Colorado State Trooper,
in his individual capacity

Defendants

---

| CIVIL COMPLAINT AND JURY DEMAND |
| --- |

## I.      INTRODUCTION

1.  Plaintiffs Kamal Shash and Shiree Gallegos bring this civil rights action seeking remedy

    for violations of rights guaranteed by the United States and Colorado Constitutions for a

racially-motivated and religiously burdensome baseless investigation, retaliatory arrest, excessive use of force, malicious criminal prosecution, and abusive administrative license revocation of Plaintiff Kamal Shash and for the racially-motivated negligence, manufacture of evidence, and failure to investigate or attend to the severe injuries of Plaintiff Shiree Gallegos following a motor vehicle accident caused by a White Hispanic woman who turned left into oncoming traffic as Plaintiffs had the right-of-way.

2. On December 9, 2021, Colorado State Police and Pueblo Police detained and arrested Plaintiff Kamal Kaywaykla Halaby Shash, a Native American community leader of Chihinne Nde (Apache), Mexican, and Palestinian ancestry. Officers ignored and failed to investigate the injuries and pain of Plaintiff Shiree Gallegos, an Indigenous woman of Aztec and Pueblo ancestry and passenger of Plaintiff Shash who was severely injured in the accident that evening. Defendants maliciously criminally prosecuted Plaintiff Shash for DUI and commenced abusive administrative license revocation proceedings. These acts of malicious prosecution and abuse of process were in retaliation for and response to Plaintiff Shash exercising his rights and inquiring about written information regarding Colorado's Express Consent law and his obligation to provide blood to a government official in violation of Plaintiff's sincerely held religious beliefs concerning giving blood. The criminal DUI charge against Plaintiff Shash was eventually dismissed in October 2022, but his license remains revoked.

3. Pueblo Police Department Deputy Chief John Doe and Corporal Steven Vaughn, Colorado State Patrol Troopers Chavez and Foster (collectively, "the Defendant Officers") failed to investigate the White Hispanic woman who caused the accident. Both Plaintiffs sustained injuries that Defendant Officers did not attend to. Instead of

investigating, the Defendant Officers engaged in unlawful discriminatory differential treatment of Plaintiffs including a failure to investigate a White Hispanic suspect, falsification of statements purportedly made by Plaintiff Gallegos, a biased investigation followed by retaliatory false arrest and excessive use of physical force against Plaintiff Shash.

4. The Defendant Officers failed to tend to or investigate the injuries of Plaintiffs Gallegos' or Shash but nevertheless arrested Plaintiff Shash for DUI without probable cause. The Defendant officers arrested Plaintiff Shash and ignored the cause and severity of Plaintiff Gallegos' injuries based in part on racist witness testimony and in retaliation for exercise of Plaintiff Shash's rights. Defendants then instituted civil license revocation proceedings without reasonable grounds and in further retaliation for exercise of rights, and in a manner that substantially burdened Mr. Shash in the exercise of his sincerely held religious beliefs concerning the sanctity of giving blood.

5. Thereafter, Defendant Officers initiated and sustained the criminal legal and civil license revocation processes insofar as they maliciously sustained criminal proceedings and abusively pursued civil administrative license revocation proceedings against Mr. Shash without probable cause or reasonable grounds therefore and in retaliation for exercise of his rights.

6. The Defendants named herein acted under color of law to deprive Plaintiff Shash of equal protection of the law and to target him for investigation, arrest, excessive physical force, criminal prosecution, and civil administrative license revocation without probable cause and maliciously based on Plaintiff Shash's race and protected First Amendment activity and associations. Defendants acted intentionally, knowingly, recklessly, and with

3

deliberate indifference to the constitutional rights of Plaintiff Kamal Shash when they arrested him in retaliation for exercise of his and without probable cause to believe he was involved in criminal activity.

7. Defendants acted intentionally, knowingly, recklessly, and with deliberate indifference when they subjected Plaintiff Shash to an unjustified seizure, excessive force, and abuse of the Colorado Criminal Legal and Civil Express Consent License Revocation process for "refusal" to provide a blood test in retaliation for exercise of his rights and without reasonable grounds to believe that Plaintiff Shash was intoxicated or unlawfully refusing a blood or breath test. The criminal DUI charge filed against Shash in Pueblo County was dismissed in October 2022, wherein the District Attorney conceded on the record that there was no *prima facie* basis to arrest Plaintiff for DUI. Despite this concession and dismissal, the Plaintiff's license remains suspended.

8. Defendants also acted under color of law when they deprived Plaintiff Gallegos of equal protection of the laws through a failure to investigate the cause and severity of Plaintiff Gallegos' injuries and demonstrable animus manifesting as deliberate indifference to any crimes committed against Plaintiff Gallegos, then falsely attributed a statement to Plaintiff Gallegos. This neglect, deliberate indifference, and false attribution were maliciously based on Plaintiff Gallegos' race and protected First Amendment activity and associations. Defendants acted intentionally, knowingly, recklessly, and with deliberate indifference to the constitutional rights and well-being of Plaintiff Gallegos when they did not attend to her injuries and fabricated a statement on her behalf.

9. Plaintiffs Shash and Gallegos now bring this action for damages against Defendants for violating Rights secured to the Plaintiffs by the Constitution and laws of the United

4

States, as well as for actions in violation of the Constitution and laws of the State of Colorado. The claims asserted herein include civil rights claims pursuant to the First, Fourth, and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. §2000cc ("RLUIPA"), as well as supplemental Colorado Constitutional claims for violations of Article II, §§4 and 7 of the Colorado Constitution, the Colorado "Enhance Law Enforcement Integrity Act" ("ELEIA") at Colo. Rev. Stat. 13-21-131, as well as state law claims for Malicious Prosecution, Wrongful Arrest, and Abuse of Process. The actions of the Defendants directly or proximately caused the deprivations of the federally and state protected rights of Mr. Shash and Ms. Gallegos asserted herein.

10. This is an action for monetary damages against Defendant City of Pueblo, Defendant Colorado State Patrol, Defendant Colorado Department of Revenue (Division of Motor Vehicles) ("DMV"), and Defendant Officers Troopers Jason Chavez and J.D. Foster of the Colorado State Patrol as well as Corporal Steven Vaughn and Deputy Chief John Doe of the Pueblo Police Department.

## II.    JURISDICTION AND VENUE

11. The federal claims for monetary damages are brought before this Court pursuant to 42 U.S.C. §1983 and 42 U.S.C. §2000cc to address the deprivations of the rights, privileges, and immunities secured to Plaintiff Shash and Gallegos by the United States Constitution while Defendants were acting under color of state authority.

12. This Court has jurisdiction over the Constitutional claims asserted herein pursuant to 28 U.S.C. §1331, which gives district courts original jurisdiction over civil actions arising

under the Constitution, laws, or treaties of the United States, and 28 U.S.C. § 1343(a)(3),
which give district courts jurisdiction over actions to secure civil rights extended by the
United States government.

13. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the claims
alleging violations of the Colorado Constitution and violations of Colorado state law
prohibiting civil rights violations, malicious prosecution, abuse of process, false
imprisonment, and wrongful arrest because the state claims and the federal claims form
part of the same case or controversy.

14. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b) because all
the acts and events giving rise to this complaint occurred in Pueblo County, in the District
of Colorado.

15. Plaintiffs Shash and Gallegos have properly filed notice of the claims asserted herein
pursuant to Colo. Rev. Stat. § 24-10-109. Plaintiff Shash filed such complaints directly
with both the Colorado State Patrol and Pueblo Police Department within 182 days of the
events occurring on December 9, 2021. Counsel for the plaintiffs likewise filed a notice
of claim concerning the actions of the Defendants with the Office of the Attorney General
within 182 days of December 9, 2021.


### III.     PARTIES

16. Plaintiff Kamal Kaywaykla Halaby Shash is a Native American man of Chihinne Nde
(Apache), Mexican, and Palestinian ancestry. Mr. Shash is a community leader in the
southern Colorado Native American Community Church of Aztlan. At the time of filing

and all relevant times, Plaintiff Shash is and has been a resident of Colorado, one of the states whose borders have been asserted onto his People's homelands.

17. Plaintiff Shiree Gallegos is an Indigenous woman of Aztec and Pueblo ancestry. At the time of filing and all relevant times, Plaintiff Gallegos is and has been a resident of Colorado, one of the states whose borders have been asserted onto her People's homelands.

18. Defendant City of Pueblo is a municipal corporation incorporated according to the laws of the State of Colorado. Defendant City of Pueblo receives federal grant funding. Defendant City of Pueblo maintains multiple stations and substations throughout the jurisdiction.

19. Defendant Colorado State Patrol ("CSP") is an agency of the State of Colorado that receives federal grant funding.

20. Defendant Colorado Department of Revenue, Division of Motor Vehicles ("DMV") is an agency of the State of Colorado that receives federal grant funding.

21. Defendant Deputy Chief John Doe is an employee of the Pueblo Police Department. He is a supervisor hereby sued in his individual and official capacity.

22. Defendant Corporal Steven Vaughn is an employee of the Pueblo Police Department. He is a supervisor hereby sued in his individual and official capacity.

23. Defendant Trooper Jason Chavez is an employee of the Colorado State Police, an agency of the state of Colorado. He is hereby sued in his individual and official capacity.

24. Defendant Trooper J.D. Foster is an employee of the Colorado State Police, an agency of the state of Colorado. He is hereby sued in his individual capacity.

## IV.   FACTUAL ALLEGATIONS

*The December 9, 2021 Traffic Accident*

25. In the afternoon on December 9, 2021, Mr. Shash and Ms. Gallegos were traveling eastbound on Highway 96/Thatcher Avenue, when Ms. Briana Apodaca turned left from Westbound Highway 96/Thatcher Avenue onto Windy Way into oncoming traffic.

26. Highway CO-96/Thatcher Avenue runs east (two lanes) and west (two lanes) with a central turn lane. When Ms. Apodaca, a White Hispanic woman, turned left, she attempted to follow a car in front of her who barely made the turn before oncoming traffic which had the right of way.

27. As a result of Ms. Apodaca's impermissible and illegal left turn, Plaintiffs collided with the tail-end of Ms. Apodaca's car.

28. Members of the Pueblo Police Department began to respond to the scene after the accident. It is unclear at what time the accident occurred, when Defendant Deputy Chief John Doe arrived on scene, or how he became involved in the accident. Defendant Colorado State Patrol received a call from Pueblo City dispatch at 5:07PM (1707 hours) advising that the Pueblo Deputy Chief of Police was involved in a traffic accident.

29. Defendant Corporal Steven Vaughn of the Pueblo Police Department arrived at the scene and activated his body-worn camera at 5:00PM (1700 hours). Defendant Vaughn spoke

with Defendant Deputy Chief John Doe, who explained that he "hit something" in the roadway but did not give details regarding his involvement in the accident or scene. Defendant Deputy Chief John Doe did not disclose speaking with Plaintiff Shash or Gallegos, nor whether he had any contact, conversation, interaction, or personal relationship with driver Brianna Apodaca.

30. Defendant Vaughn spoke with Defendant Deputy Chief John Doe for several minutes. Neither man attended to Plaintiff Gallegos before an ambulance arrived on scene or while she was removed from the vehicle and subsequently received treatment from Emergency Medical Technicians before being transported to Parkview Hospital. Plaintiff Gallegos was unable to walk, crying, and audibly expressing physical pain.

*The Investigation of Plaintiff Kamal Kaywaykla Shash*

31. Defendant Vaughn made contact with Plaintiff Shash, who was cooperative though clearly injured with abrasions on his head and chest and distraught about his wife's condition. Plaintiff Shash explained to Defendant Vaughn that he was traveling eastbound and had the right-of-way when Apodaca turned into oncoming traffic. Plaintiff Shash described Apodaca as hostile, yelling at Plaintiff Shash and getting out of her vehicle, rushing Plaintiffs' car and attempting to yank Plaintiff Gallegos' door open. Plaintiff Shash told the Defendant that he did not respond or interact with Apodaca.

32. Defendant Vaughn then spoke with Ms. Apodaca for less than one minute. During that time Apodaca advised Defendant Vaughn that she was by herself at the time of the accident, that she got out of work and turned left when the accident happened. Without prompting, Apodaca told Defendant Vaughn "I smell alcohol on his breath." Defendant

Vaughn did not ask Apodaca whose breath she was referring to, why she believed this, nor did Defendant Vaughn ask any further questions regarding her involvement with the accident or her interactions with Plaintiffs Shash and Gallegos or Defendant Deputy Chief John Doe.

33. Defendant Vaughn re-approached Plaintiff Shash, who continued to cooperate with Defendant Vaughn and denied having anything to drink that evening. Plaintiff Shash stayed in view of the officer the entire time he was told to wait for officers from Defendant Colorado State Patrol ("CSP") to arrive, as well as while CSP and Pueblo police officers were on the scene. At the outset of his interactions with Defendant Vaughn, Plaintiff Shash provided his license, the registration for his vehicle, and offered to show the officer a copy of his insurance card on his phone because the vehicle was purchased one week prior.

34. Defendant Vaughn interacted with Pueblo Fire Department members who were on scene while Plaintiff Gallegos was being treated by EMS, put onto a stretcher, and taken from the scene in an ambulance. Defendant Vaughn did not interact with Plaintiff Gallegos at all.

35. Defendant Colorado State Patrol Trooper Jason Chavez responded and arrived on scene at 5:30PM, at which time he briefly met with Apodaca after Defendant Vaughn advised Defendant Chavez that he detected the "faint odor of alcohol" around Mr. Shash and that Mr. Shash's eyes looked watery.

36. When Defendant Chavez met with Apodaca she admitted that she turned left into traffic. She then explained to Defendant Chavez that she had a witness with her but that the

witness went home, despite previously stating to Defendant Vaughn she was alone in her vehicle at the time of the collision. Defendant Chavez did not ask for the witness' name or contact information. Apodaca did not tell Defendant Chavez of any interactions with Plaintiff Shash. Defendant Chavez did not ask Apodaca any additional questions about the accident, whether she consumed alcohol, her interactions with the Plaintiffs, or her interactions with the Deputy Chief.

37. None of the Defendant officers took pictures of Apodaca's driver's license, registration, or insurance information. None of the Defendant officers cited Apodaca with causing the accident despite broad agreement that Apodaca caused the accident by turning left into oncoming traffic. None of the Defendant officers asked Apodaca questions about her alleged passenger or other witnesses, where she worked, whether she consumed alcohol or drugs recently, when she last slept, or about her interactions with Plaintiffs Shash and Gallegos. A search of Apodaca's vehicle by Defendant Colorado State Patrol Trooper J.D. Foster prior to tow revealed various items including prescription drugs and energy drinks.

38. When Defendant Chavez spoke with Plaintiff Shash, the officer told Mr. Shash that he was "getting a little bit of impairment off of [him]," to which Mr. Shash responded "I'm rattled, I'm rattled for sure." Plaintiff Shash also indicated that his chest was injured; in the days following the accident the Plaintiff received medical assessment, diagnosis, and treatment for a concussion. Defendant Chavez assured Mr. Shash that being rattled was natural after a car crash.

39. Shash was cooperative with the investigation, but did refuse roadside testing when he learned that such measures were voluntary. When Plaintiff Shash asked if refusal of

roadside field sobriety maneuvers could result in suspension of his license, Defendant

Chavez told him "I don't know man, I don't know." Trooper Chavez then ordered Mr.

Shash to "hang tight, right there" and told him "I'm going to get a statement from you."

Mr. Shash remained standing alone and in place on the street in the middle of the

accident scene, surrounded by law enforcement, EMTs, and firefighters.

40. After speaking to Mr. Shash, Defendant Chavez returned to tell Defendant Vaughn that

he was picking up a "faint odor" of alcohol, and that he suspected that Mr. Shash had

"smoked weed." Defendant Chavez did not explain any basis for his suspicion that

Plaintiff smoked marijuana, nor did the Defendant indicate a suspicion of marijuana use

or impairment in various Express Consent forms submitted to Defendant DMV following

the December 9, 2021 arrest of Plaintiff Shash. The two Defendant officers agreed that

the odor of alcohol was faint and hard to detect, with Defendant Vaughn acknowledging

"I couldn't really detect it, I had to get close to him to smell it."

41. Mr. Shash was not under the influence of any substance on December 9, 2021.  As

Indigenous Peoples, Plaintiff Shash and Gallegos regularly keep sage and sweetgrass in

their car, sacred and medicinal plants used for protection.

*Law Enforcement Request for Roadside Sobriety Test and Blood Draw*

42. After speaking with Defendant Shash again and attempting to persuade him in engaging

in possible roadside maneuvers, Trooper Chavez remarked to Corporal Vaughn on the

quantity of evidence that he was " Trying to get more… [Shash] said he does then he

doesn't want to" complete roadside sobriety tests.

43. When Defendant Chavez walked away from Plaintiff Shash he ordered Mr. Shash to sit on the ground. Mr. Shash complied and remained in that spot on the sidewalk until he was handcuffed and walked to Defendant Chavez's assigned patrol vehicle. Defendant Vaughn and other Pueblo law enforcement were present and around Mr. Shash throughout the approximately 35 minute encounter that culminated in handcuffs and transportation in a Colorado State Patrol cruiser.

44. Defendant Chavez based his arrest of Plaintiff Shash on Shash's lawful and rightful refusal to participate in roadside field sobriety tests. Defendant Foster arrived on scene as Plaintiff Shash was being arrested and assisted with arrest of Mr. Shash and movement of the Plaintiff into the cruiser of Defendant Chavez. Defendant Foster did not speak with Plaintiff Shash or attempt to investigate Plaintiff's medical conditions, impairment, or understanding of how the accident occurred.

45. After placing Plaintiff Shash in handcuffs, Defendant Chavez began to advise Mr. Shash of Colorado's Express Consent law. Plaintiff Shash did initially tell Defendant Chavez he would do anything to comply and to prove his sobriety. As an Indigenous man who has seen the power and violence of law enforcement in racially discriminatory acts, and in a situation that had injured him and his wife, Mr. Shash was fearful. Plaintiff Shash immediately requested an opportunity to engage in Field Sobriety Tests and Defendants refused. Plaintiff Shash requested a roadside preliminary breath test ("PBT") and was likewise refused.

46. When provided the option of a blood or breath test, Plaintiff Shash requested a breath test because a blood draw goes against his deeply held religious beliefs. Defendant Chavez decided - without Plaintiff Shash's consent or input - that Plaintiff would be subjected to

a blood test. This decision was purely arbitrary. In addition, any speculation without an evidentiary basis to suspect Plaintiff Shash of marijuana use or intoxication relied solely on racist stereotypes. Defendant Chavez later lied twice about this interaction, telling both CSP dispatch and Defendant Vaughn that Shash "selected for a blood test." This was untrue.

47. In the Trooper's patrol car Mr. Shash again requested a breath test. This request was based on Plaintiff Shash's sincerely held religious belief against giving blood or flesh outside of a ceremonial context. As a Sundancer and leader in the Native American Church, Plaintiff Shash holds a sincere religious belief that blood is sacred and should not be withdrawn or given from his body for any reason that is not ceremonial or religious in nature.

48. After Defendant Chavez decided on a blood test over Plaintiff Shash's request for a breath test, Defendant Chavez left Mr. Shash in the trooper's vehicle while the officer attended to other aspects of the investigation and scene clean-up with Defendants Vaughn and Foster. Defendant Chavez did not transport Mr. Shash to the hospital until approximately 6:28 PM. Defendant Chavez did not make any attempt to provide Plaintiff Shash with a breath test at any Pueblo County substation or other facility available to members of CSP. Defendant Foster did not make any attempt to transport Plaintiff Shash, to engage him in roadside Field Sobriety Tests, or to provide him with a roadside Preliminary Breath Test even though Plaintiff Shash repeatedly offered and requested various means of proving his innocence.

49. Defendant Vaughn remained on scene after Defendant Chavez arrested Plaintiff Shash. Defendant Vaughn spoke with a third-party witness named Russell Boucher, associated

with the used car dealership nearby. Defendant Vaughn began to issue orders to witness Boucher. When witness Boucher became argumentative, Defendant Vaughn explained that he thought the witness, a White man, was Plaintiff Shash's father. In response to that statement the witness sneered and responded "Do I *look* like his dad?" prompting Defendant Vaughn to take a conciliatory tone with the witness and explain the details of the DUI allegations and status of investigation against Shash to the third party witness.

50. Defendants Deputy Chief John Doe and Corporal Vaughn were present at the scene for hours on December 9, 2021. Despite this presence and involvement of two Pueblo Police Department supervisory officials in the investigation, neither man authored a written report or completed any forms related to their involvement with the investigation, observations of the scene, or interactions with the parties.

51. Defendant Foster later returned to the scene with Defendant Chavez and obtained a short video clip and written statement from witness Boucher. This faulty extension of the December 9 investigation and receipt of a video clip by Defendants Foster and Chavez was incomplete, aimed only at confirming wrongdoing by Plaintiff Shash, and did not include any inquiry or investigation of driver Apodaca's actions, impairment, or whether she had a witness with her. The officers also accepted a written statement from witness Boucher alleging that Plaintiff Shash asked the witness to help Plaintiff evade the police. Dashcam and other evidence of Plaintiff Shash's location during the investigation demonstrates that this interaction did not occur.

*Transport to and Treatment at Parkview Medical Center and Renewed Request for Blood*

52. Defendant Chavez read Plaintiff Shash his *Miranda* warnings while Plaintiff was handcuffed during transport to the Pueblo County jail and later to Parkview Medical Center for a blood draw. Mr. Shash waived his rights and agreed to speak with the Defendant, continuing to plead that he was innocent, did not cause the accident, and was not under the influence of alcohol or drugs.

53. Even though Plaintiff Shash was suffering from visible injuries including a large contusion on his chest, Defendants Chavez and Foster did not allow the Plaintiff to receive medical assessment or treatment at Parkview Medical Center.

54. Plaintiff Shash is a Sundancer and leader in the Native American Church. Plaintiff sincerely holds the religious belief that Creator taught the People that blood is what connects humans to all living things on Mother Earth, and that mindfulness of this connection to all beings is important to living in a way that does not harm others. Mr. Shash sincerely believes the Creator gave humans intellectual capacity different than any other animal so that human beings can act as stewards of the Earth and live every day in a way that always keeps in mind the interrelatedness of all beings.

55. Plaintiff Shash's sincerely held religious belief that blood holds such a vital place in the very purpose that humans have on this planet means blood is treated with the utmost reverence. Outside of ceremonies, there is no circumstance where it would be appropriate to willingly shed blood.

56. It was this sincerely held religious belief and reverence for the sanctity of blood and life that prompted Plaintiff to ask Defendant Chavez to see Plaintiff's rights regarding Colorado's Express Consent law prior to a blood draw at Parkview Hospital. Defendant

16

Chavez documented that he verbally explained Colorado's Express Consent law and that Plaintiff Shash responded by asking to see the Express Consent rights and information in writing.

57. The officer "counted his response as a refusal" and issued Plaintiff Shash a criminal summons for DUI, as well as a notice of license revocation for unreasonable refusal in violation of Colorado's Express Consent law following Plaintiff Shash's questions regarding his rights regarding giving blood. Plaintiff Shash insisted he was not refusing, and repeated as much to a nurse who was in the room.

58. Upon arrival at Parkview Medical Center Defendant Chavez had loosened Plaintiff's handcuffs and adjusted the restraints so that Plaintiff was cuffed in front of himself, rather than wait hours with his hands restrained behind his back. After the Plaintiff asked to see his rights and insisted that he was not refusing testing, Defendants Chavez and Foster re-handcuffed Plaintiff behind his back and tightened the handcuffs in a way that has caused serious and enduring injury and damage. This use of force was maliciously applied, excessive, and without probable cause to believe that Plaintiff required additional painful restraint.

59.  Defendant Foster entered into Plaintiff Shash's hospital room but did not document the interaction between Plaintiff and Defendant Chavez, did not attempt to interact with Plaintiff, and took action only aimed toward inculpating Plaintiff Shash and increasing his pain and distress through adjustment of the handcuffs. Despite these additional restrictive measures, Defendants Foster and Chavez did not transport Plaintiff Shash to the jail and later released him on a summons from their custody at Parkview Hospital.

17

60. Defendant Chavez approached and interviewed Plaintiff Gallegos in her hospital room, also at Parkview Hospital. Plaintiff Gallegos was in extreme pain from serious injuries that required a full body CT scan and impaired her mobility for months following the collision. Defendant Chavez did not ask any question about Plaintiff Gallegos' injuries and documented her injuries as "minor." Defendant Chavez attributed statements to Plaintiff Gallegos inculpating both Plaintiffs that Plaintiff Gallegos did not make, including that her injuries were minor, that Plaintiffs were returning to a family event on the evening of December 9, and that Plaintiff Gallegos and Plaintiff Shash were drinking Modelo beer at the Pueblo reservoir.

*2022 Criminal Prosecution and Administrative License Revocation*

61. Plaintiff Shash was criminally prosecuted for the misdemeanor crimes of DUI in the Pueblo County Court December 9, 2021-October 27, 2022 in Pueblo County Court. His license was administratively revoked by Defendant Department of Revenue (Division of Motor Vehicles).

62. The Express Consent DR2576 form completed by Defendant Chavez and submitted to the Defendant Department of Revenue (Division of Motor Vehicles) in support of License Revocation proceedings indicated that Plaintiff's speech was slurred and "other," his eyes were bloodshot and watery, that his breath contained the odor of alcohol, and that Plaintiff "refused" a breath or blood test. Similarly, the Colorado State Patrol DUI Impairment form was marked with false information, to include the above observations of Plaintiff Shash and the allegation that Plaintiff Shash "refused" a Preliminary Breath Test "PBT." Plaintiff Shash was not offered a PBT by any of the Defendant officers. None of these allegations made by Defendant Chavez were true or corroborated by other

evidence obtained and submitted by the Defendant officers,  including dash cam and body-worn camera footage of interactions with Plaintiff Shash.

63. In a written report, Defendant Chavez indicated that driver Apodaca told Chavez that she smelled alcohol on Plaintiff Shash's breath and requested Defendant Chavez give Plaintiff Shash a breath test. This interaction did not occur and is not corroborated by other evidence obtained and submitted by the Defendant officers, including dash cam and body-worn camera footage of interactions with Apodaca.

64. In February 2022 Defendant DMV revoked Plaintiff's license *in absentia*. Defendant DMV refused to re-open the matter or consider reconsideration.

65. Mr. Shash was prosecuted in Pueblo County Court for the misdemeanor crime of DUI in violation of Colo. Rev. Stat. §42-4-1301(1)(a) under case number 2021T002870 December 9, 2021-October 27, 2022. The DUI charge was dismissed on the motion of the District Attorney on October 27, 2022. Mr. Shash entered a plea to an amended complaint and the DUI charge was dismissed as part of the plea agreement. In dismissing the DUI charge the District Attorney for the 10th Judicial District affirmed in writing on the record to the Court that there was no *prima facie* basis for a DUI arrest of Plaintiff Shash.

66. For nearly two years Plaintiff's license has been revoked, he has attended mandatory treatment, engaged with a mandatory interlock device on all vehicles, and held SR-22 insurance, among other conditions. Defendant DMV has refused to reconsider these measures, even with the knowledge that the underlying DUI matter was subsequently dismissed for lack of a *prima facie* basis for arrest.

## V.    CAUSES OF ACTIONS

*Federal Causes of Action*

**FIRST CLAIM FOR RELIEF**
**Arrest without Probable Cause**
**U.S. Const. Amend. IV, XIV;**
**42 U.S.C. §1983**
**(Defendants Vaughn, Chavez, and Foster)**

67. Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein.

68. The Defendants are "persons" under 42 U.S.C. §1983.

69. The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint.

70. Mr. Shash had a clearly established right to be free from unreasonable search and seizure, including the right to be free from arrest without a warrant or probable cause.

71. Defendants Vaughn, Chavez and Foster were acting under color of law when the Defendants wrongfully and unlawfully seized and arrested Plaintiff Shash without Probable Cause.

72. The Defendants arrested and transported Plaintiff Shash in violation of the rights and benefits conferred upon him by the Fourth and Fourteenth Amendment to the United States Constitution.


**SECOND CLAIM FOR RELIEF**
**Excessive Force**
**U.S. Const. Amend. IV, XIV;**
**42 U.S.C. §1983**
**(Defendants Chavez and Foster)**

73. Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein

74. The Defendants are "persons" under 42 U.S.C. §1983

75. The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

76. Mr. Shash had a clearly established right to be free from excessive force, including the right to be free from excessive force without probable cause such as the unnecessary tightening of handcuffs behind his back when he was about to be released on a summons.

77. Defendants violated Mr. Shash's Fourth and Fourteenth Amendment rights to be free from excessive force when they re-affixed and tightened his handcuffs behind his back.

78. This excessive and unnecessary use of force against Plaintiff Shash was the legal and proximate cause of lasting physical injury and damage.

79. The Defendants excessive use of physical force against Plaintiff Shash was in violation of the rights and benefits conferred upon him by the Fourth and Fourteenth Amendment to the United States Constitution.

**THIRD CLAIM FOR RELIEF**
**Malicious Prosecution**
**U.S. Const. Amend. IV, XIV - Procedural Due Process**
**42 U.S.C. §1983**
**(Defendants Deputy Chief John Doe, Vaughn, and Chavez)**

80. Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein

81. The Defendants are "persons" under 42 U.S.C. §1983.

82. The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

83. Defendants violated Mr. Shash's Fourth and Fourteenth Amendment rights to be free from malicious/vindictive prosecution without probable cause and without due process when they worked together to secure and pursue false charges against him, which resulted in his unlawful confinement and criminal prosecution

84. The Defendants acted with malice based upon racial bias and retaliatory motive when they failed to investigate driver Apodaca who caused the accident and failed to tend to Plaintiff Gallegos, and instead wrongfully focused their investigation and prosecution only upon Plaintiff Shash.

85. Defendants made or caused the decision to target Mr. Shash for criminal charges and/or prosecution. The Officer Defendants worked together to initiate, continue, and expand on the criminal prosecution of Mr. Shash in order to insulate themselves from scrutiny and potential civil liability for their constitutional violations

86. The Defendants caused the prosecution of Plaintiff Shash for the crime of DUI in the Pueblo County Court December 2021-October 2022

87. The Prosecution was without probable cause and lacking in *prima facie* evidentiary basis for arrest

88. The City of Pueblo and Colorado State Patrol failure to train, discipline, and/or supervise was a legal and proximate cause of Mr. Shash's injuries.

89. As a direct result of Defendants' actions, Mr. Shash suffered humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

**FOURTH CLAIM FOR RELIEF**
**Retaliation for Exercise of Rights**
**U.S. Const. Amend. I, IV, XIV;**
**42 U.S.C. §1983;**
**42 U.S.C. §2000cc**
**(All Defendants)**

90. Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein ;

91. The Defendant Officers are "persons" under 42 U.S.C. §1983;

92. Defendants City of Pueblo, Colorado State Patrol, and Department of Revenue (Motor Vehicle Division) are "institutions" under 42 U.S.C. §2000cc;

93. The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

94. Plaintiff Shash engaged in lawful and Constitutionally protected activity when he (1) asked the officers about his rights on the street, (2) refused to take Field Sobriety Tests, and (3) engaged in free exercise of religious activity motivated by sincerely held religious belief by asking about his rights with regard to refraining from blood (which Defendant Chavez construed as a "refusal");

95. Defendants (1) falsely arrested Mr. Shash, (2) used excessive, retaliatory force against Mr. Shash (3) maliciously criminally prosecuted him in state court, and (4) abusively caused revocation of Mr. Shash's driving privileges, injuries that would chill a person of ordinary firmness from continuing to engage in protected activity of inquiring about and exercising their rights;

96. These adverse actions of Defendants were substantially motivated as response to Plaintiff Shash's constitutionally protected conduct and sincerely held religious beliefs.

97. As a direct result of Defendants' actions, Mr. Shash suffered humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

**FIFTH CLAIM FOR RELIEF**
**Substantial Burden of Protected Religious Activity**
**U.S. Const. Amend. I, XIV**
**42 U.S.C. §1983**
**42 U.S.C. §2000cc**
**(All Defendants)**

98. Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein

99. The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

100.     Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster are "persons" under 42 U.S.C. §1983;

101.     Defendants City of Pueblo, Colorado State Patrol, and Department of Revenue (Motor Vehicle Division) are "institutions" under 42 U.S.C. §2000cc;

102.     Plaintiff Shash engaged in Constitutionally protected religious activity when he asked to see his rights with regard to refrain giving blood, which Defendant Chavez construed as a refusal.

103.     Defendants Chavez and Foster, Defendant Colorado State Police, and Defendant City of Pueblo did not make a breath test available to Plaintiff Shash.

104.     Defendant Colorado DMV pursued and maintains revocation and conditions upon Plaintiff's driving privileges as a consequence for "Unreasonable Refusal" even though the Defendant Officers lacked reasonable grounds to arrest Plaintiff for DUI and Plaintiff Shash did not "refuse" a blood test.

105.     Mr. Shash's inquiry about his rights ("refusal") was based on his right to religious exercise based upon the sincerely held religious belief that he should refrain from giving blood, a substance that is to be held and treated as sacred according to the Native American Church.

106.     All Defendants substantially burdened Plaintiff Shash's sincerely held religious belief against giving blood by and through (1) the failure to make available a breath test and (2) the administrative revocation of Mr. Shash's license for "refusal" without valid grounds therefore. These actions both prevented Plaintiff Shash from participating in an

24

activity motivated by a sincerely held religious belief, and placed considerable pressure

on him to violate his sincerely held religious belief regarding the sanctity of blood.

### SIXTH CLAIM FOR RELIEF
*Monell* **Policy of Failure to Investigate**
**42  U.S.C. §1983**
**(Defendant City of Pueblo)**

107.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully

herein;

108.     The Defendants acted under color of law at all times relevant to the allegations of

acts and omissions contained in this complaint;

109.     Plaintiff Shash had a constitutional right to be free from search, seizure, and

retaliatory arrest without probable cause, to be free from retaliatory and malicious

prosecution without probable cause, and to equal protection of the laws based on a full

and fair investigation of any suspected criminal activity. Plaintiff Gallegos had a

constitutional right to equal protection of the laws, to an appropriate investigation of the

causation and extent of her injuries, and to be free from fabrication of evidence in the

form of statements made by her and inculpating her partner and the father of her children.

110.     Defendant City and County of Pueblo have a policy and custom of deliberately

and indifferently failing to investigate crimes in which supervisory staff of the Pueblo

Police Department are involved and failing to fully investigate White persons accusing

racialized people, including Native Americans such as the Plaintiffs, of criminal activity;

111.     This policy maintained by the Defendant City of Pueblo amounts to deliberate

indifference of the Plaintiffs' constitutional rights to equal protection of the laws,

freedom from unreasonable search and seizure, and freedom from malicious prosecution.

25

112.     The Defendant City of Pueblo's policy and custom directly and proximately

caused the violations of the Plaintiffs' rights as asserted herein.


### SEVENTH CLAIM FOR RELIEF
**Racially Discriminatory Investigation, Arrest, Fabrication of Evidence & Prosecution**
**U.S. Const. Amend. XIV – Equal Protection Clause;**
**42  U.S.C. §1983**
**(Defendants Deputy Chief John Doe, Vaughn, Chavez, Foster)**

113.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully

herein ;

114.     The Defendants acted under color of law at all times relevant to the allegations of

acts and omissions contained in this complaint;

115.     Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster are "persons"

under 42 U.S.C. §1983;

116.     The Officer Defendants engaged in unlawful discriminatory differential treatment

of Mr. Shash, a Native American man of Palestinian, Mexican and Chihinne Nde

(Apache) ancestry and Ms. Gallegos, an Indigenous woman.

117.     This differential treatment included (1) a failure to investigate, cite, interview, or

collect basic driver information from the White Hispanic woman driver who caused the

accident and told different stories to different officers, (2) the failure to interview Ms.

Gallegos concerning the nature and extent of her injuries or the details of the accident, (3)

falsification of a statement purportedly made by Ms. Gallegos, (4) the biased

investigation of Mr. Shash and acceptance of testimony and evidence from a racially

biased witness Russel Boucher, (5) the retaliatory and wrongful arrest without probable

cause of Mr. Shash, (6) the retaliatory revocation of Mr. Shash's license without evidence

of reasonable grounds for arrest or actual refusal to submit to a blood or breath test, (7)

the malicious criminal prosecution of Mr. Shash, and (8) abuse of the civil license

revocation process.

118.      The officers' actions were motivated by the unlawfully discriminatory basis of

Mr. Shash and Ms. Gallegos' race as Native American and Indigenous individuals, and

had the discriminatory effect of injuring and damaging Mr. Shash and Ms. Gallegos. This

unlawful discrimination, motive, and effect deprived the Plaintiffs of Equal Protection of

the laws as guaranteed by the United States Constitution.

119.      As a direct result of Defendants' actions, Plaintiffs Shash and Gallegos suffered

humiliation, emotional distress, loss of enjoyment of life, and other significant injuries,

damages, and losses.

**EIGHTH CLAIM FOR RELIEF**
**Fabrication of Evidence**
**U.S. Const. Amend. XIV – Due Process Clause;**
**42 U.S.C. §1983**
**(Defendants Deputy Chief John Doe, Vaughn, Chavez and Foster)**

120.      Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully

herein

121.      The Defendants acted under color of law at all times relevant to the allegations of

acts and omissions contained in this complaint;

122.      Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster are "persons"

under 42 U.S.C. §1983;

123.      Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster deliberately

fabricated evidence that was used to criminally charge, prosecute, and administratively

revoke the license of Plaintiff Shash. This fabricated evidence included the DMV Express

27

Consent (DR2576) form, false statements included in police reports from B. Apodaca and Plaintiff Gallegos that the witnesses did not make. The Defendants deliberately ignored and remained indifferent to exculpatory evidence relevant to Plaintiff Shash's innocence, including driver Apodaca's hostility toward Plaintiff Shash, the drugs in driver Apodaca's vehicle, and different statements to different officers.

124.     Defendants Chavez and Foster continued this investigation, prosecution, and administrative license revocation proceedings despite the fact that Defendants knew that the Plaintiff was innocent, and/or were deliberately indifferent to the Plaintiff's innocence, and the results of the investigation were used to criminally charge, prosecute, and administratively revoke the driving privileges of Plaintiff Shash.

125.     As a direct result of Defendants' actions, Plaintiffs Shash and Gallegos suffered humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses.

*Colorado State Causes of Action*

**NINTH CLAIM FOR RELIEF**
**Wrongful Arrest**
**Colo. Const. Article II, Section 7;**
**Colo. Rev. Stat. §13-21-131**
**(Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster)**

126.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein;

127.     The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

128.    Defendants Deputy Chief John Doe, Vaughn, Chavez, and Foster are "peace officers" under 13-21-131;

129.    Defendants Chavez and Vaughn while acting under color of law ;

130.    Wrongfully and unlawfully seized and arrested Plaintiff Shash without Probable Cause ;

131.    The arrest was in violation of the rights and benefits conferred upon Plaintiff Shash by Article II Section 7 of the Colorado Constitution.


**TENTH CLAIM FOR RELIEF**
**Excessive Force**
**Colo. Const. Article II, Section 7;**
**Colo. Rev. Stat. §13-21-131**
**(Defendants Chavez and Foster)**

132.    Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein

133.    Defendants Chavez and Foster are "peace officers" under 13-21-131;

134.    Defendants Chavez and Foster at all times acted under color of law during their interactions with Plaintiff Shash;

135.    Defendants violated Mr. Shash's rights under the Colorado Constitution to be free from excessive force when they re-affixed and tightened his handcuffs behind his back

136.    This excessive and unnecessary use of force against Plaintiff Shash has caused lasting physical injury and damage.

137.    The Defendants excessive use of physical force against Plaintiff Shash was in violation of the rights and benefits conferred upon him by the Article II, Section 7 of the Colorado Constitution.

**ELEVENTH CLAIM FOR RELIEF**
**False Arrest/Imprisonment**
**Colorado Tort Claim**
**(Defendants Vaughn, Chavez, and Foster)**

138.      Defendants Chavez, Vaughn, and Foster intended to restrict Plaintiff Shash's

freedom of movement.

139.      The Defendants restricted Mr. Shash's freedom of movement by seizing,

arresting, and transporting Mr. Shash.

140.      The restriction of Mr. Shash's freedom of movement was not privileged because

the Defendants acted without a warrant or probable cause.

141.      Mr. Shash was aware that his freedom of movement was restricted.

142.      The Defendants' actions resulted in damages to Mr. Shash.

**TWELFTH CLAIM FOR RELIEF**
**Impairment of Free Exercise of Religion**
**Colo. Const. Article II Section 4;**
**Colo. Rev. Stat. §13-21-131**
**(All Defendants)**

143.      Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully

herein ;

144.      The Defendants acted under color of law at all times relevant to the allegations of

acts and omissions contained in this complaint;

145.      Plaintiff Shash engaged in religious activity protected by Article II Section 4 of

the Colorado Constitution when he asked to see his rights with regard to giving blood,

which Defendant Chavez construed as a refusal.

146.      Mr. Shash's inquiry about his rights ("refusal") was based on his right to free

exercise of religion and based upon the sincerely held religious belief that he should

refrain from giving blood, a substance that is to be held and treated as sacred according to the Native American Church.

147.     Defendants substantially burdened this sincerely held religious belief and free exercise thereof through (1) the unavailability of a breath test and (2) the administrative revocation of Mr. Shash's license for "refusal" without valid grounds therefore. These actions both prevented Plaintiff Shash from participating in an activity motivated by a sincerely held religious belief, and placed considerable pressure on him to violate a sincerely held religious belief.

**THIRTEENTH CLAIM FOR RELIEF**
**Abuse of Process – Administrative License Revocation and Criminal Prosecution**
**Colorado Tort Claim**
**(Defendants Vaughn, Chavez and Foster)**

148.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein;

149.     The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

150.     Defendants Vaughn, Chavez and Foster willfully used the processes for criminal prosecution as well as civil "unlawful refusal" administrative license revocation proceedings even though Defendants lacked (1) reasonable grounds or probable cause to believe Plaintiff was under the influence and (2) lacked evidence of refusal.

151.     Defendants Chavez and Foster had an ulterior purpose in the use of the criminal and administrative proceedings to retaliate against Plaintiff Shash for exercise of Plaintiff's rights, including (1) the right to refuse field sobriety tests, (2) inquiry about

Plaintiff's rights regarding giving blood, and (3) a sincerely held religious belief regarding giving blood.

152.     Plaintiff Shash has suffered actual damages as a result of Defendants' abuse of the criminal and civil legal processes for "unlawful refusal" and subsequent administrative license revocation proceedings.

## FOURTEENTH CLAIM FOR RELIEF
## Malicious Prosecution – Criminal Prosecution
## Colorado Tort Claim
## (Defendants Vaughn, Chavez, and Foster)

153.     Plaintiff incorporates all other paragraphs of this Complaint as if set forth fully herein ;

154.     The Defendants acted under color of law at all times relevant to the allegations of acts and omissions contained in this complaint;

155.     Pueblo County Criminal case number 2021T002870 was brought against Mr. Shash December 9, 2021-October 27, 2022.

156.     The criminal matter was brought as a result of the oral and written statements of Defendants Vaughn, Chavez, and Foster to include statements in police reports, made on body-worn cameras, and contained within affidavit/etc. These statements were made without probable cause and were motivated by malice.

157.     The criminal matter ended in Mr. Shash's favor; and

158.     Mr. Shash suffered actual damages as a result of the prosecution.

## VI.     JURY DEMAND

159.     Plaintiffs Shash and Gallegos hereby demand a trial by jury in this matter.

## VII.    RELIEF REQUESTED

WHEREFORE, Plaintiffs Shash and Gallegos respectfully requests that this Court enter judgment in their favor and against Defendants, and grant:

(a) Compensatory and consequential damages, including damages for physical injury, emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

(b) All economic losses on all claims allowed by law;

(c) Punitive damages on all claims allowed by law and in an amount to be determined at trial;

(d) Award of attorney fees and costs under 42 U.S.C. § 1988, Federal Rule of Civil Procedure 54(d), and all other applicable laws;

(e) Pre and post-judgment interest at the lawful rate.

(f) Any further relief that this Court deems just and proper, and any other relief as allowed by law.


Respectfully Submitted this 8th day of December, 2023,


KAMAL KAYWAYKLA HALABY SHASH
SHIREE GALLEGOS
By Counsel

WATER PROTECTOR LEGAL COLLECTIVE


*s/ Sandra C. Freeman*
Sandra C. Freeman (Colorado Bar No. 50350)
Water Protector Legal Collective
P.O. Box 37065
Albuquerque, New Mexico 87176
sfreeman@waterprotectorlegal.org
703-254-3402