**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO**

KAMAL KAYWAYKLA HALABY SHASH,

and

SHIREE GALLEGOS,

Plaintiffs

v.

CITY OF PUEBLO, a Municipality,

COLORADO STATE PATROL,

COLORADO DEPARTMENT OF REVENUE,
DIVISION OF MOTOR VEHICLES,

DEPUTY CHIEF JOE GARCIA, City of Pueblo Police Officer,
a Supervisor in his individual and official capacity,

CORPORAL STEVEN VAUGHN, City of Pueblo Police Officer,
a Supervisor in his individual and official capacity,

TROOPER JORDAN CHAVEZ, Colorado State Trooper,
in his individual and official capacity

TROOPER J.D. FOSTER, Colorado State Trooper,
in his individual capacity

Defendants

---

PLAINTIFFS' RESPONSE TO TROOPER DEFENDANTS' MOTION TO DISMISS (DOC. 41)

---

1

Plaintiffs Kamal Kawaykla Shash and Shiree Gallegos herein Respond to the Motion to Dismiss filed by CSP Troopers Chavez and Foster ("Trooper Defendants.") Doc. No. 37.

**I. Introduction**

As outlined below, Plaintiffs concede to dismissal and clarification of certain claims, and assert the following arguments as outlined in Exhibit A. in support of allowing Plaintiff's disputed but valid and adequately pled claims to move forward.**II. Legal Standards**

Plaintiffs agree with the F.R.C.P. 12(b)(1) and 12(b)(6) standards cited by the Trooper Defendants. Plaintiff agrees with Defendants' description of the F.R.C.P. 12(b)(6) and *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009), In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations... and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010).

Defendants seek dismissal pursuant to F.R.C.P. 12(b)(6) based on both failure to state a claim and the doctrine of qualified immunity. While it is true that qualified immunity gives officials "breathing room" to make decisions, the doctrine does not protect "the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

"Ultimately, dismissal under Rule 12(b)(6) is appropriate based on qualified immunity only when the plaintiffs' well-pleaded allegations, taken as true, do not 'state a claim of violation of clearly established law." *Behrens v. Pelletier*, 516 U.S. 299, 306, (1996). In *Mullenix v. Luna,* the Supreme Court defined a clearly established right as "one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." 577 U.S. 7, 11 (2015). The Tenth Circuit understands this to mean that a plaintiff is not required to show that the very act in question was previously held unlawful in order to overcome a defense of qualified

immunity. *Walton v. Gomez (In re Estate of Booker),* 745 F.3d 405, 411 (10th Cir. 2014). Individual questions of qualified immunity are addressed further herein.

### III. Gallegos Claims

Plaintiffs concede to dismissal of Ms. Gallegos' claims against the Troopers.

### IV. Shash's claims (Claims 4, 5, 7, 11, 12, 13, 14)

#### A. Claims 11, 13, and 14

With respect to the Colorado state law tort claims asserted in Claims 11, 13, and 14, Defendant Troopers essentially argue that Colorado's Governmental Immunity Act (the "CGIA") bars Mr. Shash's state law claims and that Mr. Shash's claims fall outside the applicable statute of limitations (ECF No. 37, 9-10).

Plaintiff Shash concedes that Claim 11 regarding False Arrest/Imprisonment is clearly limited to a one year SOL by C.R.S. § 13-80-103(1)(a), and thus concedes to striking from the Amended Complaint. However, C.R.S. 13-80-102(1)(a) applies to both Malicious Prosecution and Abuse of Process tort claims, and specifically says that a two year statute of limitations applies to such claims. The abuse of process complained of in Claim 13 was initiated on December 9, 2021 and went into full effect on February 22, 2022. The criminal matter alleged to be a malicious prosecution in Claim 14 commenced on December 9, 2021, but the matter was not dismissed until October 27, 2022 and therefore accrued well within the two year statute of limitations period. *See, e.g., Kimball v. Fox,* 2023 WL 2163568 at *7-8 (D. Colo. Feb. 22, 2023).

Like the Plaintiff subjected to malicious prosecution in *Kimball*, Shash's state law claim for malicious prosecution did not accrue until the matter was terminated in the Plaintiff's favor in October 2022. The initial complaint in this matter was filed on December 8, 2023, within two years of commencement of abusive license revocation process and malicious criminal prosecution, and well before two years from the date of the February 2022 adverse license determination and October 2022 dismissal of criminal charges.

3

**B. RLUIPA applies to Plaintiff Shash's Claims 4 and 5.**

Defendant Troopers request that Plaintiff Shash's Claims 4 and 5 be dismissed because Shash was not in a "facility of institution" as defined by RLUIPA at any relevant time. Doc. 37, 10. Plaintiffs do not dispute Defendant's recitation of RLUIPA law which holds that RLUIPA only provides prospective relief, and that damages claims cannot lie against individuals. Plaintiffs hereby incorporate and adopt all arguments previously submitted concerning the viability of RLUIPA with respect to the CSP and DOR Defendants. See Doc. 41.

As explained in the Plaintiff's Response to Defendant Colorado State Patrol ("CSP") and Department of Revenue ("DOR") Motion to Dismiss, Claims 4 and 5 assert claims pursuant to both RLUIPA *and* 42 U.S.C. 1983. RLUIPA is only available for prospective remedies against *agency* defendants and 42 U.S.C. 1983 provides remedy only as to *individual defendants*. Plaintiffs agree that RLUIPA does not apply to individual defendants; however, 42 U.S.C. § 1983 do apply to both Defendants Chavez and Foster for violations of the First Amendment, which are evaluated according to the same standards articulated in RLUIPA.

**C. Claim 5: Free Exercise violation and qualified immunity**

To state a claim for violation of the First Amendment's Free Exercise Clause, a plaintiff must plead facts that plausibly show or allow the inference that the regulation or action at issue 'substantially burdened sincerely-held religious beliefs. *Khan v. Barela*, 808 F. App'x 602, 614 (10th Cir. 2020) (*quoting Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(examining Free Exercise claims in prison context and holding that the denial of access to tarot cards could violate the Constitution if a prisoner wanted to use them for a religious purpose). Here, Defendants do not challenge the sufficiency of Plaintiff's allegations with regard to his sincerely-held belief regarding giving blood. The Court should thus consider only whether the Defendants' acts

imposed a substantial burden. Because Shash does not assert an invidious discrimination claim, the Defendant Troopers' discriminatory purpose is irrelevant.

**1. Substantial Burden**

For an initial showing "courts use the same test under the First Amendment as is used under RLUIPA." *Orwig v. Williams*, No. 16-CV-00781-PAB-SKC, 2019 WL 4751775, at *8 (D. Colo. Sept. 30, 2019); *see also Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (" the principle dispositive here is the same: [the plaintiff] must show that defendants' conduct imposed a substantial burden on his religious practice."); *Khan*, 808 F. App'x at 614 n.12 (noting that Tenth Circuit's "discussion of substantial burden in ... RLUIPA cases applies as well to a First Amendment free-exercise claim").

The Tenth Circuit has held this standard to mean that in the context of a RLUIPA claim, "a burden on a religious exercise rises to the level of being 'substantial' when ... the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief." *Yellowbear v. Lampert*, 741 F.3d at 55.

Based on these standards, the facts pled in the Am. Comp. are sufficient to plausibly allege a substantial burden under the First Amendment for the same reasons explained in Doc. 41 with regard to Plaintiff's RLUIPA claims.

**2. Discriminatory Purpose**

Defendants claim that Plaintiff Shash's Free Exercise claim must fail because "Shash fails to sufficiently plead that Defendants acted with discriminatory purpose." Doc 37, 13. The only case the CDOC Defendants cite for this proposition is *Carr v. Zwally.* 760 F. App'x 550

5

(10th Cir. 2019). Plaintiff Shash's claims should be distinguished from the analysis in *Carr*, because the *Carr* court construed the plaintiff's claim as one for invidious discrimination. *Id*. at 554. In that context, the Court noted that "[t]he Supreme Court has stated that '[w]here the claim is invidious discrimination in contravention of the First ... Amendment[ ],[its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose.' " *Id*. (emphasis added) (alterations in original) (quoting *Iqbal*, 556 U.S. at 676).

The analysis of a claim for invidious discrimination considers whether the complained-of action was taken "not for a neutral ... reason but for the purpose of discriminating on account of ... religion," *id*. at 555. This analysis is entirely different from the "substantial burden" inquiry applicable here, which focuses only on "the coercive impact the government's actions [have] on the individual claimant's ability to engage in a religious exercise, as he understands that exercise and the terms of his faith," *Yellowbear v. Lampert,* 741 F.3d at 55. As explained by the Tenth Circuit in *Blair v. Raemisch*, the question in a substantial burden claim is whether the state official intentionally pressured [the plaintiff] to abandon a sincerely held religious practice. The proper focus in assessing whether a plaintiff has sufficiently alleged substantial burden, because the inquiry into the existence of a substantial burden focuses only on the coercive impact of the government's actions." 804 F. App'x 909, at 918. Plaintiff is this not required to establish discriminatory purpose.

    **D. Plaintiff Shash's Claim 12 adequately alleges a substantial burden on the free exercise of religion brought under ELEIA and Defendants' request for dismissal must be denied.**
Defendants acknowledge that a claim of impairment of free exercise of religion under Article II, Section 4 of the Colorado Constitution is evaluated under the same standards as a First Amendment claim asserted under 42 U.S.C. 1983. *Americans United for Separation of Church and State Fund, Inc. v. State of Colorado*, 648 P.2d 1072 (Colo. 1982); Doc. 37, at 14. Thus, the

6

same analyses apply to Claim 5 (First Amendment Substantial Burden) as to Claim 12 (Colorado Article II Section 4 Substantial Burden. Mr. Shash has adequately stated a claim for a substantial burden of his sincerely held religious beliefs pursuant to both 42 U.S.C. 1983 and Article II, Section 4 of the Colorado Constitution, and the Court should deny the Trooper Defendants' Motion to Dismiss Claim 12 for the same reasons the Court should deny the motion with respect to Claim 5, *See Section II.C, infra.*

> **E. Claim 7: Shash sufficiently states an Equal Protection violation, and Trooper Defendants are not immune**

Defendants argue that Plaintiff Shash's Equal Protection cannot proceed because, according to the Defendants, Shash cannot show and has not adequately alleged that law enforcement knew of his race or that he was treated differently from the white Hispanic driver who hit the Plaintiffs' vehicle. Doc. 37, 15-17. Defendants assert that even if Shash has plausibly pled an Equal Protection claim, Claim 7 against the Trooper Defendants must be dismissed on the basis of qualified immunity because Shash did not have a "clearly established right" to be free from racially discriminatory law enforcement investigation, arrest, license suspension, and prosecution. *Id.* at 17-18.

The Tenth Circuit has held that in order to survive a motion for summary judgment on a Equal Protection claim, a plaintiff in a § 1983 suit challenging alleged racial discrimination in traffic stops and arrests must present evidence from which a jury could reasonably infer that the law enforcement officials involved were motivated by a discriminatory purpose and their actions had a discriminatory effect. *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003).

Here, Shash plausibly pleads differential treatment, discriminatory purpose, and differential treatment, and the court should deny the request to dismiss Claim Seven because

7

Plaintiff has plausibly pled a violation of the Equal Protection Clause insofar as the AC clearly states that Defendant Troopers violated his clearly established rights when they treated Shash, a Native American man of Palestinian, Mexican and Chihinne Nde (Apache) ancestry, differently than the similarly situated white Hispanic driver who caused the accident.

### 1. Amended Complaint adequately states Trooper awareness of race.

Defendants argue that Plaintiff Shash made no allegations that either Chavez or Foster were aware of Shash's race. Defendants further argue that because there was no knowledge of Shash's race that Defendants Chavez and Foster could not racially discriminate against Shash. Defendants point to pertinent case law in *U.S. v. Borrego* and *Kelly v. Rice*. 66 Fed.Appx. 797; 375 F. Supp. 2d 203 (S.D.N.Y. 2005). The facts under *Borrego* depict an African American man failing to show racial discrimination when a police officer pulled his vehicle over, prior to knowledge of his race, for traffic infractions. The facts under *Kelly* (a persuasive authority) depict an African American woman failure to show *disability* discrimination. *Borrego's* facts are more similar to the facts at hand regarding Defendants' treatment of Plaintiff Shash; however, *Kelly* does not establish or point to requirements for racial discrimination and is primarily concerned with disability discrimination.

Here, Plaintiff Shash does not offer anything in the Amended Complaint regarding disability discrimination. *Kelly* also engages in an analysis regarding pro se plaintiffs and requirements to effectively meet a prima facie showing of harm. Again, Plaintiff Shash is not appearing before the Court or creating claims in the Amended Complaint pro se. It is unclear to Plaintiff Shash how *Kelly* could provide any authority, persuasive or otherwise, on the present set of facts and legal analysis required of his Claims.

Similarly, *Borrego* also does not offer illumination on the facts present here for Plaintiff Shash. In *Borrego*, the officer pulled the vehicle over to issue a citation for traffic infractions prior to learning the plaintiff's race. Both *K*elly and *B*orrego include facts and analysis presented when officers acted without true knowledge of each plaintiffs' race. Here, for Plaintiff Shash, that was not the case. Officers may not have known with specificity Plaintiff Shash's race, but could see that Plaintiff Shash was not white prior to engaging with Plaintiff Shash for the remainder of their encounter which included activities that produced real injury to Plaintiff Shash and resulted in a blood draw counter to Plaintiff Shash's sincerely held religious beliefs.

The facts in this case present actual questions about whether Defendants Chavez and Foster engaged in racial discrimination.

2. **Shash was clearly treated differently than a similarly situated white Hispanic woman at the scene in which Defendants Chavez and Foster first encountered Shash.**

Plaintiff Shash was treated differently than the white Hispanic woman that was also at the scene of the car accident by Defendants contrary to the Defendants' showing of the facts at hand. Prior to Officer Vaughn "advising" Defendant Chavez that Vaughn that "he detected 'the faint odor of alcohol' around Mr. Shash and that Mr. Shash's eyes looked watery," (Doc. 18, ¶ 38.) Officer Vaughn spoke with the white Hispanic woman also involved in the car accident and during that conversation she told Officer Vaughn "I smell alcohol on his breath," without specifying who "he" was. Am. Comp. ¶ 32. Officer Vaughn did not ask the white Hispanic woman who she was referring to or why she believed this and Officer Vaughn did not engage in further questioning of the white Hispanic woman about anything to do with her interactions with the car accident or with Plaintiff Shash. Officer Vaughn assumed the white Hispanic woman was referring to Mr. Shash and began investigating Mr. Shash disparately when compared to the

9

white Hispanic woman and conveyed a wrongful determination to Defendant Chavez. Defendants failed to add this context and additional facts to their motion to dismiss.

Defendants argue that Plaintiff Shash was not treated differently than the similarly situated white hispanic woman at the scene of the car accident. The Defendants point to *A.M. v. Holmes* in an attempt to show that Plaintiff Shash and the white Hispanic woman were similarly situated enough, but there were other factors that seemingly showed the two "are not similar in all material respects." 830 F.3d 1123, 1168 (10th Cir. 2016); Doc. 37, p. 16. However, th*e* facts presented in *A.M. v. Holmes* better show that Defendants engaged in disparate and unequal treatment of Plaintiff Shash. In *A.M. v. Holmes*, a minor had a history of disturbances at school, was strip-searched after returning to school from suspension under suspicion for drug activity after finding the student in question had a belt with a marijuana leaf on the buckle, a red bandana, and a larger amount of cash than thought reasonable, and compared to the minor's peers, the search was found reasonable.

Here, Defendants compare the situation of the minor in *Holmes* to Plaintiff Shash to determine that Shash was "not similar in all material respects" to the white Hispanic woman. However, the facts presented in *Holmes* would seemingly better support a more thorough investigation of the white Hispanic woman. Prior to the white Hispanic woman's vehicle being towed, Defendant Foster searched her vehicle. That search revealed a number of items and included prescription drug bottles and energy drinks. Am. Comp. ¶ 37. Prescription drugs, especially in combination with energy drinks, can indicate intoxication and impaired motor vehicle operation. Comparatively, Defendants believed without question the white Hispanic woman's characterization of Plaintiff Shash's supposed substance use while operating a vehicle and point to an "odor of alcohol," "watery" eyes, and "getting a little bit of impairment off of

10

[Plaintiff Shash]." Doc. 18, ¶¶ 38, 41. Defendants used physical appearances that can be attributed to racial components of appearance rather than items that accompanied Plaintiff Shash's person as was done in *Holmes* and disregarded in relation to the white Hispanic woman after learning of Plaintiff Shash's race.

As a result, Plaintiff Shash was not treated equally to a similarly situated white Hispanic woman that was also at the scene of the car accident that initiated Defendants' harmful interactions with Plaintiff Shash.

### 3. Shash adequately pleads racially-based motive and discriminatory purpose.

A valid Equal Protection claim requires a plaintiff to provide evidence that he was treated differently from others who are similarly situated to him, and further that the acts forming the basis of the plaintiff's claim were motivated by a discriminatory purpose. *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *Marshall v. Columbia Lea Regional Hosp.*, 345 F.3d 1157 (10th Cir. 2003)(citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 272–74, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); *Village of Arlington Heights*, 429 U.S. at 264–66, 97 S.Ct. 555. Here, Shash does specifically allege that officers were improperly motivated by a racially discriminatory purpose. Am. Comp. ¶ ¶ 1, 87, 123.

The standard for a claim of racially selective law enforcement in violation of Equal Protection articulated by the Supreme Court in *Armstrong* has been applied to traffic stops challenged on Equal Protection grounds. *See Marshall*, 345 F.3d at 1168 (*citing Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir.2001); *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 533–36 (6th Cir.2002)). Even though a plaintiff is required to allege that officers acted with a racially discriminatory purpose, the discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision. *Marshall*, at 1168

11

(*citing Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir.1996) (*quoting Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

In *Marshall*, plaintiff, a Black man, asserted an Equal Protection claim for a racially discriminatory stop and DUI arrest. 345 F.3d 1157. In examining the circumstances in *Marshall,* the Tenth Circuit articulated the standards of proof needed for a plaintiff to withstand a motion for summary judgment and held that Marshall was able to plausibly establish an Equal Protection violation and "the racially selective nature of his stop and arrest not by means of statistical inference but by direct evidence of Officer Porter's behavior during the events in question, Officer Porter's own statements and testimony (the credibility of which can be evaluated by a jury), and Officer Porter's alleged record of racially selective stops and arrests in drug cases under similar circumstances in Midland, Texas." *Id.*

Plaintiff Shash's claim involves circumstances remarkably similar to those in *Marshall* wherein the Tenth Circuit approved of an Equal Protection claim based on a racially discriminatory stop and DUI arrest. Both Mr. Marshall and Mr. Shash were baselessly accused of DUI and drug possession, and subjected to blood testing without a warrant or probable cause in spite of their cooperation with a traffic investigation. Like the officer whose conduct was in question in *Marshall*, Trooper Chavez was immediately accusatory of Plaintiff Shash, baselessly accused him of "smoking weed" without evidence (Doc. 18, para 43), acknowledged that any odor of alcohol was hard to detect (*Id)*, lied about the interaction between himself and the Plaintiff (para, 45), included fabricated and shifting allegations in official documents (para 65), and changed stories between various affidavits and forms (para 66). *Cf. Marshall,* 345 F.3d at 1170 (changing stories in context of DUI stop and arrest can establish racial pretext and

12

motive)(*citing McGarry v. Board of County Com'rs*, 175 F.3d 1193, 1200 (10th Cir.1999) (in employment discrimination context, change of story also tends to show pretext); *Cole v. Ruidoso Mun. Schools,* 43 F.3d 1373, 1382 (10th Cir.1994) (same)).

The facts of the interaction between the plaintiff and arresting officer in *Marshall* are remarkably similar to the Trooper Chavez's conduct during the investigation and arrest of Mr. Shash on December 9, 2021, and the holding in *Marshall* is instructive for this Court's analysis of the Trooper Defendants' motion to dismiss. It is clear that the necessary racially discriminatory motive and purpose for an equal protection claim can be established through the actions and words of a single officer, and that such discriminatory purpose need not be the only purpose underlying an officer's conduct, but it must be a motivating factor in the decision. *Marshall*, at 1168 (*citing Villanueva v. Carere*, 85 F.3d 481, 485 (10th Cir.1996) (*quoting Village of Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 265–66, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)).

The holding and analysis in *Marshall* establish that Plaintiff Shash has sufficiently pled racially discriminatory purpose and motivation with respect to Claim 7 in this case, and the Defendants motion to dismiss the claim must be denied.

### 4. Shash had clearly established right to be free from racially discriminatory investigation, arrest, and prosecution

Even though Shash has plausibly pled a denial of Equal Protection actionable pursuant to 42 U.S.C. 1983, Defendants nevertheless assert that the court should dismiss Claim 7 on the basis of qualified immunity, claiming that Shash's right to be free from racially discriminatory investigation involving fabrication of evidence, arrest, and prosecution was insufficiently well established. Doc. 37, 17-18.

13

The Trooper Defendants do not cite any case law in support of their proposition that Claim 7 should be dismissed in its entirety on the basis of qualified immunity, and ignores the Tenth Circuit opinion in *Marshall v. Columbia Lea Regional Hosp.*, (345 F.3d 1157 (10th Cir. 2003)) reversing dismissal of a race-based Equal Protection claim made by a Black driver falsely accused of DUI following a racially motivated traffic stop. The facts and holding in *Marshall,* decided in 2003, clearly established the right to be free from a racially discriminatory and bias-motivated DUI investigation, arrest, and prosecution, and the court should deny the Trooper Defendants' request to dismiss Shash's equal protection on the basis of qualified immunity.

**V.  Plaintiff Shash's Claims 1, 4, and 8 against Trooper Foster should be dismissed entirely.**

**VI. Plaintiffs concede that Plaintiffs are not bringing claims 1-3 pursuant to the Fourteenth Amendment, but included citation to the Amendment in order to clarify that the provisions of the United States Constitution are applicable to the actions of <u>state</u> agents such as the Trooper Defendants by virtue of the Fourteenth Amendment. Plaintiffs do not object to striking the language regarding the Fourteenth Amendment to Claims 1-3 if that helps to clarify the issues and claims.**

**VII. Plaintiff Shash concedes that Claims 9, 10, and 12 pursuant to the ELEIA against Defendant Chavez in his official capacity should be dismissed. Similarly, Plaintiff Shash also concedes with Defendants that Claims 1, 2, 3, 4, 5, 7, and 8 against Defendant Chavez in his official capacity should also be dismissed. Plaintiff Shash also concedes that injunctive and declaratory relief should be dismissed against Defendants Chavez and Foster in their individual capacities.**

**VIII. Conclusion**

For the reasons stated herein, the Trooper Defendants' motion to dismiss should be granted with respect to the aspects conceded by Plaintiff as stated above. However, Defendants motion to dismiss should be denied in aspects consistent with this response.

Respectfully submitted May 28, 2024,

14

KAMAL SHASH
SHIREE GALLEGOS
Plaintiffs, By Counsel


*/s/ Sandra C. Freeman*
Water Protector Legal Collective
P.O. Box 37065
Albuquerque, New Mexico
sfreeman@waterprotectorlegal.org

*/s/ Summer Blaze Aubrey*
Water Protector Legal Collective
P.O. Box 37065
Albuquerque, New Mexico
saubrey@waterprotectorlegal.org


CERTIFICATE OF SERVICE

This is to certify that I have duly served the within PLAINTIFFS' RESPONSE TO TROOPER DEFENDANTS' MOTION TO DISMISS upon all parties herein by e-filing with the CM/ECF system maintained by the court this 28th day of May, 2024, addressed as follows:


 CLAYTON J. ANKNEY
Assistant Attorney General
Civil Litigation & Employment Law Section
Tort Litigation Unit
Ralph L. Carr Colorado Judicial Center
1300 Broadway, 6th Floor
Denver, Colorado 80203

Counsel for Defendants CSP and DOR

15