**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Civil Action No. 23-cv-03249-NYW-MDB

KAMAL KAYWAYKLA HALABY SHASH, and
SHIREE GALLEGOS,

      Plaintiffs,

v.

CITY OF PUEBLO,
COLORADO STATE PATROL,
COLORADO DEPARTMENT OF REVENUE, DIVISION OF MOTOR VEHICLES,
DEPUTY CHIEF JOE GARCIA, in his individual and official capacities,
CORPORAL STEVEN VAUGHN, in his individual and official capacities,
TROOPER JORDAN CHAVEZ, in his individual and official capacities, and
TROOPER J.D. FOSTER, in his individual and official capacities,

      Defendants.

---

## ORDER ON MOTIONS TO DISMISS

---

This matter comes before the Court on three Motions to Dismiss (collectively, the "Motions"). First, Defendants Colorado Department of Revenue, Division of Motor Vehicles ("DOR") and Colorado State Patrol ("CSP") (together, "State Defendants") have moved to dismiss all claims against them ("State's Motion"). [Doc. 21, filed April 12, 2024]. Second, Defendants Jordan Chavez ("Trooper Chavez") and J.D. Foster ("Trooper Foster") (together, "Trooper Defendants") seek partial dismissal of the claims against them ("Troopers' Motion"). [Doc. 37, filed May 7, 2024]. Third, Defendants City of Pueblo ("City"), Deputy Chief Joe Garcia ("Deputy Chief Garcia"), and Corporal Steven Vaughn ("Corporal Vaughn") (together with the City and Deputy Chief Garcia, the "City Defendants") seek dismissal of all claims against them ("City's Motion"). [Doc. 42, filed

May 13, 2024].  Plaintiffs have responded in opposition to each of the Motions, [Doc. 41; Doc. 48; Doc. 53], and the respective Defendants have replied, [Doc. 43; Doc. 54; Doc. 57].  The Court finds that oral argument would not materially assist in the disposition of the Motions.  Upon review of the Motions and the related briefing, the applicable case law, and the entire docket, all three Motions are respectfully **GRANTED**.

BACKGROUND

The Court takes the following facts from Plaintiffs' amended Civil Complaint and Demand for Relief ("Complaint"), [Doc. 18], and presumes they are true for purposes of the Motions.  This action arises from a traffic accident on December 9, 2021, [*id.* at ¶¶ 1–2], and the subsequent arrest and prosecution of Plaintiff Kamal Kawaykla Halaby Shash ("Mr. Shash").  Mr. Shash describes himself as a "Native American man of Chihinne Nde (Apache), Mexican, and Palestinian ancestry" and a "community leader in the southern Colorado Native American Community Church of Aztlan."  [*Id.* at ¶ 19].

Mr. Shash and Plaintiff Shiree Gallegos ("Ms. Gallegos" and, together with Mr. Shash, "Plaintiffs") allege that they were traveling east on Highway 96/Thatcher Avenue in Pueblo, Colorado when they collided with a car driven by Briana Apodaca ("Ms. Apodaca").  [*Id.* at ¶ 28].  Plaintiffs allege that Ms. Apodaca caused the accident, [*id.* at ¶¶ 29–30], which appears to have occurred shortly before 5:00 p.m., [*id.* at ¶¶ 31–32].  Deputy Chief Garcia also became involved in the accident after he "hit something" in the roadway, but the precise details are unclear.  [*Id.* at ¶ 32].  Corporal Vaughn arrived at the scene at 5:00 p.m.  [*Id.*].  Plaintiffs allege that he spoke with Deputy Chief Garcia but neither of the two officers "attended to" Ms. Gallegos, who was injured and ultimately taken to a hospital.  [*Id.* at ¶ 33].

As alleged, Corporal Vaughn next spoke with Mr. Shash, who told Corporal Vaughn that Ms. Apodaca had caused the accident by attempting an illegal left turn.  [*Id.* at ¶ 34].  Plaintiffs allege that Mr. Shash described Ms. Apodaca as "hostile" and told Corporal Vaughn that she had yelled at Mr. Shash and "rush[ed] Plaintiffs' car."  [*Id.*].  Corporal Vaughn then spoke to Ms. Apodaca, who allegedly told him "without prompting" that she "smell[ed] alcohol on his breath," presumably referring to Mr. Shash.  [*Id.* at ¶ 35].  Plaintiffs allege that Corporal Vaughn spoke to Mr. Shash again, who denied having anything to drink that evening.  [*Id.* at ¶ 36].  Trooper Chavez, after arriving at the scene at 5:30 p.m., also spoke with Mr. Shash and informed him that he was "getting a little bit of impairment off of [him]."  [*Id.* at ¶ 38, 41 (brackets in original)].  Plaintiffs allege that Trooper Chavez consulted with Corporal Vaughn and told him that he had smelled a "faint odor" of alcohol and additionally suspected that Mr. Shash had smoked marijuana, though Trooper Chavez did not explain any basis for his suspicion.  [*Id.* at ¶ 43].  Plaintiffs allege that the officers agreed "the odor of alcohol was faint and hard to detect."  [*Id.*].  According to Plaintiffs, neither Trooper Chavez nor Corporal Vaughn questioned Ms. Apodaca about her own possible alcohol consumption or blame for the accident.  [*Id.* at ¶ 40].

Plaintiffs allege that Mr. Shash initially refused roadside sobriety testing.  [*Id.* at ¶¶ 42, 45].  Based on this refusal, Trooper Chavez arrested Mr. Shash, handcuffed him, and placed him in the back of Trooper Chavez's police cruiser.  [*Id.* at ¶¶ 46–47].  Plaintiffs allege that Mr. Shash then requested a breath test, both after being handcuffed and after being placed in the cruiser.  [*Id.* at ¶¶ 48–50].  Instead, Trooper Chavez allegedly decided that Mr. Shash would be subjected to a blood test.  [*Id.* at ¶ 49].  Plaintiffs allege that Trooper Chavez made this decision "without [Mr.] Shash's consent or input" and on a

3

"purely arbitrary" basis.  [*Id.*].  Mr. Shash avers he requested the breath test because a blood draw would violate his "sincerely held religious belief against giving blood or flesh outside of a ceremonial context."  [*Id.* at ¶¶ 50, 57–58].

Around 6:30 p.m., Trooper Chavez and Trooper Foster transported Mr. Shash to Parkview Hospital.  [*Id.* at ¶ 51].  Plaintiffs allege that the Troopers did not permit him to receive medical assessment or treatment while they attempted to elicit his consent for a blood test.  [*Id.* at ¶¶ 55, 59].  Mr. Shash alleges that he never outright refused a blood test, but that Trooper Chavez "counted his response as a refusal" when Mr. Shash requested to see in writing his rights under Colorado's Express Consent law before undergoing a blood draw.  [*Id.* at ¶¶ 59–60].  During this conversation, Plaintiffs allege, Troopers Chavez and Foster allegedly adjusted Mr. Shash's handcuffs so that Mr. Shash's hands were restrained tightly behind his back, causing "serious and enduring injury and damage."  [*Id.* at ¶¶ 61–62].  Due to Mr. Shash's purported refusal to undergo a blood test, Trooper Chavez allegedly issued him a criminal summons for DUI and a notice of driver's license revocation for unreasonable refusal under Colorado's Express Consent law.  [*Id.* at ¶ 60].  Plaintiffs allege that Trooper Chavez, in preparing a report, attributed statements to "[Ms.] Gallegos inculpating both Plaintiffs that [Ms.] Gallegos did not make, including that her injuries were minor, that Plaintiffs were returning to a family event on the evening of December 9, and that [Plaintiffs] were drinking Modelo beer at the Pueblo reservoir [prior to driving]."  [*Id.* at ¶ 63].  However, the Trooper Defendants did not transport Mr. Shash to jail and instead released him from their custody at the hospital.  [*Id.* at ¶ 62].

Mr. Shash was criminally prosecuted for DUI in Pueblo County Court.  [*Id.* at ¶ 64].

Plaintiffs allege that Trooper Chavez's written report and the Express Consent form he submitted to DOR contain several false or uncorroborated statements:  (1) that Mr. Shash exhibited slurred speech and bloodshot or watery eyes at the accident scene; (2) that Mr. Shash refused a breath or blood test; and (3) that Ms. Apodaca told Trooper Chavez that she smelled alcohol on Mr. Shash's breath and requested that Trooper Chavez administer a breath test of Mr. Shash.  [*Id.* at ¶¶ 65–66].  Ultimately, the DUI charge was dismissed in October 2022 as part of a plea agreement.  [*Id.* at ¶ 68].  In the agreement, the District Attorney for Colorado's 10th Judicial District affirmed that there was no prima facie basis for a DUI arrest of Mr. Shash.  [*Id.*].  But based on the initial DUI charge, DOR revoked Mr. Shash's driver's license in February 2022 and has not reconsidered the revocation since the DUI charge was dismissed.  [*Id.* at ¶¶ 64, 67].

Mr. Shash and Ms. Gallegos initiated this lawsuit on December 8, 2023.  [Doc. 1]. In the operative Amended Complaint, they assert fourteen causes of action against Defendants.  Those claims include eight federal causes of action:

(1)    A claim for wrongful arrest in violation of the Fourth and Fourteenth Amendments of the federal Constitution, brought under 42 U.S.C. § 1983 and asserted against Corporal Vaughn and the Trooper Defendants ("Count One"), [Doc. 18 at ¶¶ 70–75];

(2)    An excessive force claim under § 1983 against the Trooper Defendants ("Count Two"), [*id.* at ¶¶ 76–82];

(3)    A malicious prosecution claim under § 1983 against Deputy Chief Garcia,

Corporal Vaughn, and Trooper Chavez in their individual capacities[1] ("Count Three"), [*id.* at ¶¶ 83–92];

(4)    A First Amendment retaliation claim under § 1983 against all Defendants ("Count Four"), [*id.* at ¶¶ 93–100];

(5)    A free exercise claim against all Defendants, brought under § 1983 as to Deputy Chief Garcia, Corporal Vaughn, and the Trooper Defendants, and brought under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, as to the State Defendants and the City ("Count Five"), [Doc. 18 at ¶¶ 101–09];

(6)    A municipal liability claim against the City for failure to investigate, brought under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) ("Count Six"), [Doc. 18 at ¶¶ 110–17];

(7)    An equal protection claim against Deputy Chief Garcia, Corporal Vaughn, and the Trooper Defendants, brought under § 1983 ("Count Seven"), [*id.* at ¶¶ 118–24];

(8)    A Fourteenth Amendment due process claim under § 1983 for fabrication of evidence against Deputy Chief Garcia, Corporal Vaughn, and the Trooper

---

[1] Plaintiffs identify that Deputy Chief Garcia and Corporal Vaughn are sued in their individual and official capacities. *See* [Doc. 18 at 1]. It is axiomatic that constitutional claims against defendants in their official capacities are claims against the municipality. *See Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998). But in the specific allegations within Counts Three, Seven and Eight, Plaintiffs aver that these individuals are defined as "persons" under 42 U.S.C. § 1983. [Doc. 18 at ¶¶ 84, 120, 127]. Thus, the City Defendants and this Court construe these claims as being brought solely against Defendants Garcia and Vaughn in their individual capacities, and Plaintiffs do not suggest otherwise in their Response, where they identify the § 1983 claims against the City as Counts Four, Five, and Six. [Doc. 53 at 9].

Defendants ("Count Eight"), [*id.* at ¶¶ 125–30];

Plaintiffs assert their remaining claims under Colorado law:

(9)     A wrongful arrest claim in violation of the Colorado Constitution, brought
        against Deputy Chief Garcia, Corporal Vaughn, and the Trooper
        Defendants under Colo. Rev. Stat. § 13-21-131 (2024) ("Count Nine"), [Doc.
        18 at ¶¶ 131–36];

(10)    An excessive force claim in violation of the Colorado Constitution, brought
        against the Trooper Defendants under § 13-21-131 ("Count Ten"), [*id.* at
        ¶¶ 137–42];

(11)    A tort claim for false arrest and imprisonment against Corporal Vaughn and
        the Trooper Defendants ("Count Eleven"), [*id.* at ¶¶ 143–47];

(12)    A free exercise of religion claim in violation of the Colorado Constitution,
        brought against all Defendants under § 13-21-131 ("Count Twelve"), [*id.* at
        ¶¶ 148–52];

(13)    A tort claim for abuse of process against Corporal Vaughn and the Trooper
        Defendants ("Count Thirteen"), [*id.* at ¶¶ 153–57]; and

(14)    A tort claim for malicious prosecution against Corporal Vaughn and the
        Trooper Defendants ("Count Fourteen"), [*id.* at ¶¶ 158–63].

Plaintiffs seek a variety of declaratory, injunctive, and monetary relief.  [*Id.* at 34–36].

Plaintiffs sue Trooper Foster in his individual capacity, [*Id.* at ¶ 27], and Trooper Chavez,

Corporal Vaughn, and Deputy Chief Garcia in their individual and official capacities,[2] [*id.*

---

[2] As an initial matter, Plaintiffs concede that the § 1983 claims against Trooper Chavez in
his official capacity should be dismissed.  [Doc. 48 at 14].  The Court agrees.  Sovereign
immunity bars these official-capacity claims because Trooper Chavez is an employee of

at ¶¶ 24–26]. In combination, the Motions contend that each of the fourteen claims should be dismissed in part or as a whole. *See* [Doc. 21; Doc. 37; Doc. 42]. The Court considers the Parties' respective arguments below.

## LEGAL STANDARD

### I.    Rube 12(b)(1)

Under Rule 12(b)(1), a court may dismiss an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) (quotation omitted). The burden of establishing jurisdiction rests with the party asserting jurisdiction. *Kline v. Biles*, 861 F.3d 1177, 1180 (10th Cir. 2017). Attacks on subject matter jurisdiction may take two different forms—a facial attack or a factual attack—which implicate different analytical frameworks. The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has explained that

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)

_____

the State of Colorado, and a suit against him in his official capacity is the same as a suit against the state itself. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66–71 (1989) ("Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity . . . or unless Congress has . . . overrid[den] that immunity." (citation omitted)). Accordingly, Counts One, Two, Three, Four, Five, Seven, and Eight are **DISMISSED without prejudice** insofar as they assert a claim against Trooper Chavez in his official capacity. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice.").

8

> may take one of two forms.  First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint.  In addressing a facial attack, the district court must accept the allegations in the complaint as true.  Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001) (quotations and citations omitted)).  Here, the Court construes the Motions as facial attacks on subject matter jurisdiction.  Defendants attached no exhibits to the respective Motions, and Plaintiffs concede the sole factual dispute over whether Plaintiffs filed a statutorily required notice before bringing Colorado tort claims against state employees.  *See supra* Part VII.B.  The Court therefore presumes the factual allegations in the Complaint are true for purposes of Defendants' jurisdictional challenges.  *See Scull v. Wolf*, No. 20-cv-01624-NYW, 2020 WL 7384842, at *1 n.2 (D. Colo. Dec. 16, 2020) (construing motion as facial attack where defendant described its challenge as "primarily facial" and plaintiff did not dispute the sole factual issue raised in the motion).

## II.    Rule 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible." (quotation omitted)). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## III.    Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A motion to dismiss based on qualified immunity creates a presumption of immunity, *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (citation omitted), and the burden shifts to the plaintiff to overcome this presumption, *Hunt v. Montano*, 39 F.4th 1270, 1284 (10th Cir. 2022).  To rebut an assertion of qualified immunity, a plaintiff must establish "(1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct."  *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (quotation omitted).

A right is clearly established if there is a Supreme Court or Tenth Circuit decision on point or if the weight of authority in other courts provides that the right is clearly

established.  *See DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001).  A case is considered "on point" if it involves materially similar conduct to the case at hand or applies "with obvious clarity" to the conduct at issue.  *Lowe v. Raemisch*, 864 F.3d 1205, 1208 (10th Cir. 2017) (cleaned up).  Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (defining inquiry as whether "state of the law" at the time of alleged violation gave defendants "fair warning" that their conduct was unconstitutional).

## ANALYSIS

As discussed above, each of the Defendant groups—the State Defendants, the Trooper Defendants, and the City Defendants—filed its own Motion to Dismiss.  *See* [Doc. 21; Doc. 37; Doc. 42].  Nevertheless, given the fact that some causes of action are asserted across Defendant groups and Defendants have different organizational structures to each of their Motions, the Court considers the respective arguments by count as opposed to considering the individual Motions separately.

## I.    Count One:  Wrongful Arrest

The City Defendants argue that Count One should be dismissed as to Corporal Vaughn, [Doc. 42 at 7–8], and the Trooper Defendants seek dismissal of Count One as to Trooper Foster, [Doc. 37 at 18–19].  No Defendant contends that Count One should be dismissed as to Trooper Chavez.  Moreover, Plaintiffs concede that Count One, as asserted against Trooper Foster, "should be dismissed entirely."  [Doc. 48 at 14].  The Troopers' Motion is therefore **GRANTED** as to Count One, and Count One is **DISMISSED**

**without prejudice** with respect to Trooper Foster. The Court limits its analysis of Count One to the arguments regarding Corporal Vaughn.

The City Defendants contend that Count One should be dismissed as to Corporal Vaughn because Plaintiffs fail to allege that Corporal Vaughn participated in Mr. Shash's arrest. Arrests are "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." *United States v. Torres-Guevara*, 147 F.3d 1261, 1264 (10th Cir. 1998) (quotation omitted); *see also Hayes v. Florida*, 470 U.S. 811, 815–16 (1985). However, "individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (brackets and quotation omitted).

Plaintiffs argue without authority that Corporal Vaughn's involvement in other parts of the investigation qualifies as personal participation in Mr. Shash's arrest. [Doc. 53 at 5]. The Court respectfully disagrees. Plaintiff alleges that Trooper Chavez, not Corporal Vaughn, arrested Mr. Shash and placed him in the back of Trooper Chavez's cruiser. [Doc. 1 at ¶¶ 46–48]. As Defendants point out, an officer's mere presence at the scene of an investigation does not constitute personal participation in an alleged constitutional violation. [Doc. 42 at 9]; *see Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (finding no personal participation where officer was present at the scene but did not "assist or direct" the officer who performed the arrest); *Choate v. Huff*, 773 F. App'x 484, 487 (10th Cir. 2019) (granting qualified immunity to defendant in excessive force claim who was "the lead officer on the scene and had the most contact with [the decedent] before she was shot," but neither used force nor directed other officers to use force). Nor does the fact that Corporal Vaughn aided Trooper Chavez in other parts of the

investigation amount to personal participation in the arrest. *See Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (holding that officer who made alleged false affidavit statements regarding prior events in investigation but "played no role" in carrying out the arrest could not be liable under § 1983).

While the Tenth Circuit has recognized that an officer may be liable for a failure to intervene in an unlawful arrest, the officer must have "observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene." *Jones v. Norton*, 809 F.3d 564, 576 (10th Cir. 2015) (brackets and quotation omitted). Plaintiffs do not allege that Corporal Vaughn knew or should have known that Trooper Chavez arrested Mr. Shash without probable cause,[3] nor do they allege that Corporal Vaughn had a realistic opportunity to intervene. *See Franco v. City of Boulder*, No. 19-cv-02634-MEH, 2021 WL 857601, at *16 (D. Colo. Mar. 8, 2021) (granting summary judgment on unlawful arrest claim where plaintiff did not allege that officer personally participated in arrest and did not argue that officer should have intervened). In sum, the Court finds that Plaintiffs fail to allege any form of personal participation by Corporal Vaughn in Mr. Shash's arrest. Accordingly, the City's Motion is **GRANTED** as to Count One, and Count One is **DISMISSED without prejudice** as to Corporal Vaughn.

---

[3] Plaintiffs allege that Trooper Chavez based his arrest on Mr. Shash's "lawful and rightful refusal to participate in roadside field sobriety tests." [Doc. 18 at ¶ 47]. But they do not allege that Corporal Vaughn was aware of this, or that Corporal Vaughn had reason to believe that the other evidence of Mr. Shash's intoxication—a faint odor of alcohol and watery eyes—did not amount to probable cause. [*Id.* at ¶ 38]. And while Colorado law may not permit an arrest based on a refusal to submit to field sobriety testing, *see People v. Carlson*, 677 P.2d 310, 317–18 (Colo. 1984) (en banc), *abrogated on other grounds by People v. Chavez-Barragan*, 379 P.3d 330 (Colo. 2016), the Tenth Circuit has held that such a refusal can contribute to probable cause under the Fourth Amendment, *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007).

In addition, Plaintiffs clarify that Count One does not attempt to assert a freestanding Fourteenth Amendment claim for unlawful arrest. [Doc. 48 at 14]; *see also Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (distinguishing between Fourth and Fourteenth Amendment claims based on allegations of "unconstitutional imprisonment"). The Court agrees with the Parties that Count One should be construed solely as a Fourth Amendment claim. Count One is **DISMISSED with prejudice** insofar as it asserts a wrongful arrest claim under the Fourteenth Amendment, and references to the Fourteenth Amendment with respect to Count One, [Doc. 18 at 20], shall be **STRICKEN** from the forthcoming Second Amended Complaint.

## II.    Count Two:  Excessive Force

The Trooper Defendants only seek to dismiss Count Two to the extent that it asserts a claim under the Fourteenth Amendment. [Doc. 37 at 23–24]. Plaintiffs agree that Count Two should be properly construed as a Fourth Amendment excessive force claim. [Doc. 48 at 14]. Plaintiffs explain that they only invoke the Fourteenth Amendment because it applies the Fourth Amendment's protection to state officers. [Doc. 48 at 14]; *see also Torres v. Madrid*, 592 U.S. 306, 314 (2021) ("[T]he Fourteenth Amendment . . . incorporated the protections of the Fourth Amendment against the States."). This Court declines to address the relationship between the doctrine of incorporation and § 1983. However, the Court agrees that the standards for excessive force claims under the Fourth and Fourteenth Amendments are distinct, and that the Fourth Amendment supplies the applicable standard here. *See Est. of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) ("[T]he Fourth Amendment, not the Fourteenth, governs excessive force claims arising from treatment of an arrestee detained without a warrant and prior to any probable

cause hearing." (cleaned up)).  Accordingly, Count Two is **DISMISSED with prejudice**[4] only insofar as it asserts an excessive force claim under the Fourteenth Amendment and the reference to the Fourteenth Amendment, [Doc. 18 at 21], shall be **STRICKEN** from the forthcoming Second Amended Complaint.

## III.   Count Three:  Malicious Prosecution

First, the Trooper Defendants raise an argument similar to their challenge to Count Two, and argue that Plaintiffs cannot bring a Fourteenth Amendment malicious prosecution claim because Colorado law provides a tort claim for malicious prosecution.  [Doc. 37 at 24 (citing *Myers v. Koopman*, 738 1190, 1193 (10th Cir. 2013))].  They do not move to dismiss the Fourth Amendment malicious prosecution claim against Defendant Chavez.  [*Id.* at 3].  Plaintiffs again clarify that Count Three asserts a Fourth Amendment malicious prosecution claim, and the Fourteenth Amendment is cited only for incorporation purposes.  [Doc. 48 at 14].  As with Count Two, Count Three is **DISMISSED with prejudice** insofar as it asserts a malicious prosecution claim under the Fourteenth Amendment and the reference to the Fourteenth Amendment, [Doc. 18 at 22], shall be **STRICKEN** from the forthcoming Second Amended Complaint.

Next, the City Defendants argue that Count Three should be dismissed as to Deputy Chief Garcia and Corporal Vaughn because Plaintiffs fail to allege that either officer caused Mr. Shash's prosecution.  [Doc. 42 at 10].  To state a claim for malicious

---

[4] Though dismissal of claims pursuant to Rule 12(b)(6) is generally without prejudice, "dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).  Here, any attempt by Plaintiffs to further amend their operative pleading to state a cognizable claim for wrongful arrest under the Fourteenth Amendment would be futile given the applicable legal authority.

prosecution under the Fourth Amendment, Mr. Shash must allege that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Margheim v. Buljko*, 855 F.3d 1077, 1082 (10th Cir. 2017) (quotation omitted). The City Defendants' challenge therefore relates to the first element of the malicious prosecution claim.

Plaintiffs contend that two allegations in the Complaint suffice to establish causation. [Doc. 53 at 6]. First, unnamed "Defendants" violated Mr. Shash's rights by "work[ing] together to secure and pursue false charges against [Mr. Shash], which resulted in his unlawful confinement and criminal prosecution." [Doc. 18 at ¶ 86]. Second, Plaintiffs allege that Mr. Shash's DUI charge occurred "as a result of the oral and written statements" by Corporal Vaughn and Trooper Chavez. [*Id.* at ¶ 161].

These allegations fall short of establishing that Corporal Vaughn or Deputy Chief Garcia caused Mr. Garcia's arrest or prosecution. As an initial matter, Plaintiffs fail to satisfy the personal participation requirement described above. To succeed on his § 1983 claims, Mr. Shash must "make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (cleaned up). The conclusory allegation that "Defendants" in general pursued false charges against Mr. Shash provides little insight into whether Deputy Chief Garcia's or Corporal Vaughn's conduct caused Mr. Shash's prosecution. Similarly, Plaintiffs fail to identify any statement made by Corporal Vaughn in a report, "on body-worn camera[]," or in an affidavit that "resulted in" Mr. Shash's arrest. *See* [Doc. 18 at ¶ 161]. Any concrete

allegation of a report or affidavit in the Complaint is either specific to Trooper Chavez or a broad "collective allegation[]." *Pahls*, 718 F.3d at 1225; *see* [Doc. 1 at ¶ 53 (alleging that Deputy Chief Garcia did not write a written report on the investigation); *id.* at ¶¶ 66, 128]. At one point, Plaintiffs even suggest that Corporal Vaughn's body-camera footage would have undermined the prosecution of Mr. Shash rather than furthered it. [*Id.* at ¶ 65]. Regardless, the Complaint alleges that Trooper Chavez arrested Mr. Shash and, more importantly, decided to "issue [Mr.] Shash a criminal summons for DUI" based on a conversation that Corporal Vaughn and Deputy Chief Garcia had no part in. [*Id.* at ¶¶ 46–48, 60]. As alleged, Mr. Shash's prosecution was caused by Trooper Chavez's conduct. The Court concludes that Plaintiffs fail to satisfy the causation element of a malicious prosecution claim against Corporal Vaughn or Deputy Chief Garcia.

Even if Mr. Shash could identify conduct by Corporal Vaughn or Deputy Chief Garcia that caused Mr. Shash's confinement or prosecution, the Court further finds that Plaintiffs fail to adequately allege that either officer acted with malice. "[M]alice, in the context of malicious prosecution, requires evidence of intent, not mere negligence." *Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016). "[M]alice may be inferred from intentional or reckless behavior." *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014) (citation omitted). And because malicious prosecution under § 1983 is derived from the common law, the Court observes that Colorado "defines 'malice' in state malicious prosecution claims as 'any motive other than a desire to bring an offender to justice.'" *Chavez-Torres*, 660 F. App'x at 629 (quoting *Suchey v. Stiles*, 394 P.2d 739, 741 (Colo. 1964)).

17

While Plaintiffs fault certain investigative decisions by Corporal Vaughn and Chief Deputy Garcia, [Doc. 18 at ¶¶ 35, 52–53], none of the allegations rises to the level of intentional or reckless behavior. For instance, the allegation that Corporal Vaughn inadequately questioned Ms. Apodaca about the accident does not indicate a knowing or reckless intent that Mr. Shash be prosecuted, especially given that Corporal Vaughn neither directed nor participated in Mr. Shash's eventual arrest. *See* [*id.* at ¶ 35]. The Complaint contains no allegations suggesting that Corporal Vaughn or Deputy Chief Garcia exhibited a "specific animus" toward Mr. Shash. *Cf. San Agustin v. El Paso Cnty.*, No. 18-cv-02646-MEH, 2019 WL 4059167, at *29 (D. Colo. Aug. 28, 2019) (finding malice where plaintiff alleged officer manipulated evidence and presented it to grand jury). Plaintiffs therefore fail to adequately allege the first and fourth elements of a malicious prosecution claim. The City's Motion is **GRANTED** as to Count Three, and Count Three is **DISMISSED without prejudice** with respect to Corporal Vaughn and Deputy Chief Garcia.

## IV.    Counts Four and Five:  First Amendment and RLUIPA

Counts Four and Five are difficult to parse. For both Counts Four and Five, Plaintiffs present the claim as a single claim against all Defendants, [Doc. 18 at 23–24], but in fact assert two distinct causes of action against distinct groups of Defendants. First, Plaintiffs purport to bring § 1983 claims for First Amendment violations against the Corporal Vaughn, Deputy Chief Garcia, and the Trooper Defendants. *See* [*id.* at ¶¶ 94, 103]. Second, Plaintiffs suggest that Counts Four and Five arise under RLUIPA with respect to the State Defendants and the City. [*Id.* at ¶¶ 95, 104]. The Court agrees that Plaintiffs may not assert RLUIPA claims against individual Defendants. *Stewart v. Beach*,

18

701 F.3d 1322, 1334 (10th Cir. 2012) ("RLUIPA does not provide a cause of action against individual defendants in their individual capacities.").  Nor can Plaintiffs assert § 1983 claims against state agencies like CSP and DOR.  *See* § 1983 (allowing suit against a "person" who violates an individual's federal constitutional or statutory rights); *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997) ("[Section] 1983 creates no remedy against a State.").  Counts Four and Five are respectfully **DISMISSED with prejudice** to the extent they assert RLUIPA claims against any individual Defendant, and **DISMISSED with prejudice** to the extent they assert § 1983 claims against CSP and DOR.  The Court considers the Parties' substantive arguments below.

### A.    Count Four

**RLUIPA.**    RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution."  42 U.S.C. § 2000cc-1(a).  RLUIPA borrows the definition of "institution" from the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. §§ 1997–1997j; *see also Khatib v. Cnty. of Orange*, 649 F.3d 898, 902 (9th Cir. 2011).  CRIPA defines "institution" as "any facility or institution . . . which is owned, operated, or managed by, or provides services on behalf of any State or political subdivision of a State" and, inter alia, "a jail, prison, or other correctional facility" or "a pretrial detention facility."   42 U.S.C. § 1997(1)(B).  Congress included in RLUIPA an admonition that the statute "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution."  42 U.S.C. § 2000cc-3(g).

Because Plaintiffs allege that Mr. Shash was never taken to jail, [Doc. 18 at ¶ 62], the Parties dispute whether Mr. Shash was ever "confined to an institution" for RLUIPA

purposes.  [Doc. 21 at 8–10; Doc. 41 at 10–12; Doc. 42 at 16–17].  Mr. Shash argues that his time "in the custody" of CSP qualifies as confinement in a "pretrial detention facility." [Doc. 41 at 11–12].[5]  But while Mr. Shash raises arguments relevant to a finding that he was in "pretrial detention," [*id.* at 12], he omits any discussion of whether his time in the Trooper Defendants' custody was spent in a "facility."   The Court thus agrees with Defendants that Mr. Shash was never "residing in or confined to" a qualifying institution. [Doc. 21 at 9].

Although the Court is mindful that RLUIPA must be construed broadly, 42 U.S.C. § 2000cc-3(g), the Court remains bound by the "ordinary meaning" of the statutory text "where the language of the statute is plain," *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1394 (10th Cir. 2009).  As used in RLUIPA, the plain meaning of the word "facility," refers to a physical building or location.   *See Facility*, Merriam Webster, https://www.merriam-webster.com/dictionary/facility (last visited March 14, 2025) ("something (such as a hospital) that is built, installed, or established to serve a particular purpose"); *Facility*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/ english/facility (last visited March 14, 2025) ("a place, especially including buildings, where a particular activity happens").   The few courts to address this issue have found that restriction or supervision of an individual who is not located in a physical facility cannot sustain a RLUIPA claim.  *See Mueller v. Bennett*, No. 3:18-cv-00528-RCY, 2020 WL 1430430, at *7 (E.D. Va. Mar. 23, 2020) (finding that placement on probation was not

---

[5] Plaintiffs suggest that their RLUIPA arguments with respect to CSP apply equally to the City.  [Doc. 53 at 7].  But there is no allegation that that Mr. Shash was "in the custody" of the City, much less confined to a City "pretrial detention facility."  *See generally* [Doc. 18]. The Amended Complaint alleges that Mr. Shash was arrested, transported, and released by the Trooper Defendants, both of whom are CSP officers.  [*Id.* at ¶¶ 47, 50, 55, 62].

a "facility or institution" under RLUIPA); *Belton v. Betzhold*, No. 12-cv-00053-LA, 2012 WL 6094461, at *1 (E.D. Wisc. Dec. 7, 2012) ("RLUIPA does not apply to parolees."). By RLUIPA's plain text, Mr. Shash was neither residing in nor confined to a "facility or institution" when the alleged infringement of his free exercise rights occurred. Accordingly, Counts Four and Five are **DISMISSED with prejudice** insofar as they assert RLUIPA claims against CSP, DOR, the City, and Corporal Vaughn and Deputy Chief Garcia in their official capacities.[6]

*First Amendment Retaliation.* The remaining portion of Count Four asserts a First Amendment Retaliation claim against Corporal Vaughn, Deputy Chief Garcia, and the Trooper Defendants. The Trooper Defendants do not seek dismissal of Count Four as to Trooper Chavez, and Plaintiffs concede that Count Four "should be dismissed entirely" as to Trooper Foster. [Doc. 48 at 14]. The Troopers' Motion is therefore **GRANTED** as to Count Four with respect to Trooper Foster. Accordingly, the Court considers only the adequacy of Plaintiff's allegations as to Corporal Vaughn and Deputy Chief Garcia.

To state a claim for First Amendment retaliation, Mr. Shash must allege

(1) that he was engaged in constitutionally protected activity; (2) that the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendants' adverse action was substantially motivated as a response to his exercise of constitutionally protected conduct.

---

[6] Because the Court finds that RLUIPA does not apply to Mr. Shash's time in Trooper Chavez's custody, the Court need not reach the State Defendants' remaining arguments that Mr. Shash was never in DOR's custody and that sovereign immunity bars Mr. Shash from recovering money damages under RLUIPA. [Doc. 21 at 3].

*Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1227 (10th Cir. 2020)

(quotation and brackets omitted).

The Court finds that Mr. Shash fails to adequately allege these elements as to

Corporal Vaughn and Deputy Chief Garcia.  First, as with Counts One and Three, Mr.

Shash fails to allege that Corporal Vaughn and Deputy Chief Garcia personally

participated in any retaliatory conduct.  The alleged retaliatory conduct includes false

arrest, excessive force, malicious prosecution, and revocation of Mr. Shash's "driving

privileges."  [Doc. 18 at ¶ 97].  But the Court has already found that Plaintiffs fail to allege

any participation by Corporal Vaughn and Deputy Chief Garcia in Mr. Shash's arrest,

treatment while in custody, or prosecution.  And the factual allegations reflect that Trooper

Chavez, not Corporal Vaughn, made the decision to charge Mr. Shash with DUI and then

made statements that led to Mr. Shash's prosecution and loss of his driver's license.  [*Id.*

at ¶¶ 60, 65–66]; *see also Pahls*, 718 F.3d at 1225 (reiterating that § 1983 liability must

be "predicated on a violation traceable to a defendant-official's 'own individual actions'"

(quoting *Iqbal*, 556 U.S. at 676)).

Because Mr. Shash has failed to adequately plead a First Amendment retaliation

claim against Corporal Vaughn or Deputy Chief Garcia, and because he has conceded

his claim against Trooper Foster, Count Four is respectfully **DISMISSED without**

**prejudice** as to these three Defendants.  And because Plaintiffs fail to allege a City policy

or custom that caused Mr. Shash to suffer an alleged First Amendment violation, Count

Four is **DISMISSED without prejudice** as to the City.  *See Bd. of Cnty. Comm'rs v.*

*Brown*, 520 U.S. 397, 403–04 (1997) (requiring "a plaintiff seeking to impose liability on a

municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the

plaintiff's injury"); *Quintana v. Santa Fe Bd. of Cnty. Comm'rs*, 973 F.3d 1022, 1034 (10th

Cir. 2020) (same).

### B.    Count Five:  Free Exercise of Religion

The remaining portion of Count Five brings a § 1983 claim against Deputy Chief

Garcia, Corporal Vaughn, and the Trooper Defendants.  Plaintiffs allege that Trooper

Chavez denied Mr. Shash the opportunity to take a breath test and effectively placed Mr.

Shash in a position where he had to submit to a blood test or be charged with DUI.  [Doc.

18 at ¶¶ 49, 59–60].  Plaintiffs argue that this constitutes a substantial burden on Mr.

Shash's First Amendment right to free exercise of his religious beliefs, which prohibit

blood draws outside a ceremonial context.  [*Id.* at ¶ 109; Doc. 48 at 4–5].  Based on the

Complaint, Deputy Chief Garcia and Corporal Vaughn were uninvolved in the alleged

constitutional conduct, and Trooper Foster was merely present at the scene with no

knowledge that a blood draw would threaten Mr. Shash's free exercise rights.  *Novitsky*,

491 F.3d at 1254.  Count Five is therefore **DISMISSED without prejudice** for Plaintiffs'

failure to allege personal involvement by these three Defendants.[7]  The Court turns to

whether Plaintiffs' allegations in Count Five state a claim against Trooper Chavez.

Under the First Amendment, the "free exercise inquiry asks whether government

has placed a substantial burden on the observation of a central religious belief or

practice."  *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 481 F. Supp. 2d

---

[7] Plaintiffs also fail to allege a City custom or policy that caused Trooper Chavez, a state
employee, to carry out a violation of Mr. Shash's First Amendment rights.  *See Brown*,
520 U.S. at 403.  Count Five is therefore **DISMISSED without prejudice** to the extent it
asserts a claim against the City.

1213, 1223 (D. Colo. 2007) (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 565 (1983)).  The Tenth Circuit has explained that

> a burden on a religious exercise rises to the level of being "substantial" when (at the very least) the government (1) requires the plaintiff to participate in an activity prohibited by a sincerely held religious belief, (2) prevents the plaintiff from participating in an activity motivated by a sincerely held religious belief, or (3) places considerable pressure on the plaintiff to violate a sincerely held religious belief—for example, by presenting an illusory or Hobson's choice where the only realistically possible course of action available to the plaintiff trenches on sincere religious exercise.

*Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014).  To state a free-exercise claim under § 1983, a plaintiff must also "assert conscious or intentional interference with his free exercise rights."  *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) ("[A]n isolated act of negligence would not violate [a plaintiff's] First Amendment right to free exercise of religion."); *see also McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012) (reiterating that "conscious or intentional interference" is required under § 1983 (quoting *Gallagher*, 587 F.3d at 1070)).  *But see Blair v. Raemisch*, 804 F. App'x 909, 918 (10th Cir. 2020) (rejecting argument that defendants did not intentionally pressure plaintiff to violate religious beliefs because the "inquiry focuses only on the coercive *impact* of the government's actions" (quoting *Yellowbear*, 741 F.3d at 55)).

The Parties' dispute focuses on the scienter requirement articulated in *Gallagher*. The Trooper Defendants argue that the Court should construe Count Five as an "invidious discrimination" claim, [Doc. 37 at 13], which requires a plaintiff to demonstrate that the defendant acted with "the purpose of discriminating on account of . . . religion," *Carr v. Zwally*, 760 F. App'x 550, 554 (10th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 677).  Such a requirement would be even stricter than *Gallagher*'s holding that conscious *or* intentional

interference will suffice, because *Iqbal*'s "purposeful discrimination" standard necessitates a showing that an official "undert[ook] a course of action '"because of," not merely "in spite of," the action's adverse effects upon an identifiable group.'" *Ralston v. Cannon* (*Ralston I*), 884 F.3d 1060, 1063 n.3 (10th Cir. 2018) (brackets omitted) (quoting *Iqbal*, 556 U.S. at 676–77) ("[T]here is reason to doubt [after *Iqbal*] whether 'conscious' interference with an individual's right to free exercise amounts to a viable § 1983 First Amendment claim for damages."). Plaintiffs, on the other hand, argue that no scienter requirement whatsoever should apply, because Plaintiffs have styled Count Five as a "substantial burden" claim rather than an invidious discrimination claim.[8]  [Doc. 48 at 4–6].  According to Plaintiffs, *Blair* requires the Court to disregard scienter in substantial burden claims and focus solely on the "coercive impact" of the alleged government action. [*Id.* at 6 (citing *Blair*, 804 F. App'x at 918)].

To the extent *Blair* rejects any scienter requirement and focuses solely on the "coercive impact of the government's actions," that holding is likely no longer good law. *See Blair*, 804 F. App'x at 918.  The Tenth Circuit's decisions in *Ralston I* and *Ralston v. Cannon* (*Ralston II*), No. 19-1146, 2021 WL 3478634, at *5–7 (10th Cir. Aug. 9, 2021), indicate that either *Gallagher* or *Iqbal* adds a scienter requirement to § 1983 free-exercise claims.  *Ralston I* expressly raises the possibility that *Iqbal* could apply to a § 1983 free-exercise claim.  884 F.3d at 1063 n.3.  And in *Ralston II*, the Tenth Circuit declined to adopt an attempt to reconcile *Gallagher* and *Iqbal* along the same lines Plaintiffs propose

---

[8] The Trooper Defendants' understanding of Count Five as a religious discrimination claim is not without support.  Plaintiffs allege in Count Five that CSP, the City, and the Trooper Defendants collectively failed to "make a breath test available" to Mr. Shash based on their unspecified "discriminatory intent."  [Doc. 18 at ¶ 106].

here—that a lower level of scienter might apply to claims alleging a substantial burden rather than religious discrimination. *See* [Doc. 48 at 4–6]; 2021 WL 3478634, at *7. There, the plaintiff-appellant suggested that "[t]here is no tension between *Gallagher*, which deals with claims of a substantial burden on sincerely-held religious beliefs, and *Iqbal*, which deals with discrimination based on religion." *Id.* The Tenth Circuit replied that it has "never endorsed this constitutional distinction" and noted that at least two subsequent Tenth Circuit decisions have applied *Iqbal*'s purposeful discrimination standard to § 1983 free-exercise claims. *Id.* at *7 & n.8 (first citing *Carr*, 760 F. App'x at 554–55; and then citing *Williams v. Wilkinson*, 645 F. App'x 692, 707 (10th Cir. 2016) (rejecting § 1983 claim where defendant enacted prison policy that led to substantial burden, but plaintiff failed to allege that "formulation of the policy was motivated by a discriminatory intent" under *Iqbal*)). Neither *Ralston I* nor *Ralston II* contemplated that § 1983 free-exercise claims contain no scienter requirement at all.

Given the apparent conflict among *Gallagher*, *Iqbal*, and *Blair*, the Court starts and ends its analysis at the "clearly established" prong of qualified immunity. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that district courts may exercise their discretion to begin at either prong of the qualified immunity analysis). While Plaintiffs allege that Mr. Shash made an "inquiry" regarding his right to decline a blood test that was "based on his right to religious exercise," there is no allegation that Mr. Shash disclosed his religious beliefs to any Defendant, nor that Trooper Chavez was ever aware of Mr. Shash's religious beliefs. [Doc. 18 at ¶¶ 49–50, 108]. In other words, Plaintiffs fail to allege that Trooper Chavez purposefully imposed a substantial burden on Mr. Shash's free-exercise rights. *Ralston II*, decided roughly four months before the events underlying

this case, granted qualified immunity in this same situation.  *See Ralston II*, 2021 WL 3478634, at *7 (granting qualified immunity because "the answer to the 'constitutional question' of whether [a defendant] could be subject to First Amendment liability for acting without purposeful discrimination . . . was hardly 'beyond debate'" (quoting *al-Kidd*, 563 U.S. at 741)).    Because Plaintiffs have not identified a clearly established First Amendment right implicated by Trooper Chavez's conduct, Trooper Chavez is entitled to qualified immunity.    Accordingly, Count Five is respectfully **DISMISSED without prejudice** as to Trooper Chavez

## V.    Count Six:  Municipal Liability

Plaintiffs seek to hold the City liable under § 1983 for the City's alleged failure to adequately investigate certain crimes and failure to adequately train its police officers. *See generally* [Doc. 18 at ¶¶ 110–17].  To state a claim for municipal liability, Plaintiffs must allege (1) an official policy or custom (2) that caused or acted as the "moving force" behind the violation of Mr. Shash's constitutional rights and (3) was enacted or maintained with "deliberate indifference to an almost inevitable constitutional injury."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769–71 (10th Cir. 2013).

***Failure to Investigate.***  Plaintiffs first allege that the City has a "policy and custom" of "failing to investigate crimes in which supervisory staff of the Pueblo Police Department are involved and failing to fully investigate White persons associated with the police accusing racialized people . . . of criminal activity."  [Doc. 18 at ¶ 113].  This allegation is entirely conclusory.  Plaintiffs allege no supporting facts demonstrating that this failure to investigate is an official policy of the City.  Nor do they explain how City officials' conduct on the day of Mr. Shash's investigation and arrest reflects a municipal custom, which

exists based on a "persistent and widespread practice of unconstitutional conduct by municipal employees." *Moreland Props., LLC v. City of Thornton*, 559 F. Supp. 2d 1133, 1151 (D. Colo. 2008) (citations omitted). Even if the Court found that City officials violated Mr. Shash's rights, Plaintiffs allege no other events or incidents demonstrating that City officials' investigation of Mr. Shash was representative of a widespread practice. It appears that Plaintiff's allegations of a municipal custom rest entirely on the single incident that forms the basis for this case. *See* [Doc. 18 at ¶¶ 110–17]. But "[a] single, isolated incident of an alleged constitutional violation is not sufficient to establish an unconstitutional policy or custom." *De Verges v. Bd. of Cnty. Comm'rs*, 591 F. Supp. 3d 1066, 1073 (N.D. Okla. 2022) (citing *Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985)). Because Plaintiffs' conclusory allegations fail to sufficiently allege a policy or custom, *Iqbal*, 556 U.S. at 678, the Court need not reach the remaining elements of municipal liability with respect to the failure to investigate theory.

**Failure to Train.** Plaintiffs alternatively allege that the City failed to train its "police officers regarding anti-racist, appropriate and culturally aware investigative techniques of Indigenous Peoples." [Doc. 18 at ¶ 116]. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To hold a municipality liable for a failure to train, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* at 62 (quotation omitted). Failure-to-train liability may arise, however, "in a narrow range of circumstances where a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle

recurring situations."  *Valdez v. McDonald*, 66 F.4th 796, 815 (brackets omitted) (quoting *Brown*, 520 U.S. at 409).

Plaintiffs' single, conclusory allegation of a failure to train falls far short of either avenue for failure-to-train liability.  Plaintiffs do not allege that any unconstitutional conduct by City officials was part of a pattern of violations.  *See generally* [Doc. 18].  Nor do they explain how Plaintiffs' alleged constitutional injuries from the single December 2021 incident were "highly predictable," part of a "recurring" situation, or preventable with the additional training desired by Plaintiffs.  *Valdez*, 66 F.4th at 815.  Moreover, with respect to the deliberate indifference requirement, Plaintiffs invoke the phrase "deliberate indifference" without offering any underlying factual allegations.  [Doc. 18 at ¶ 114]; *see also Valdez*, 66 F.4th at 817 (outlining a three-part test for deliberate indifference).  In short, Count Six comprises only conclusory statements and "threadbare recitals of the elements" of municipal liability.  *Iqbal*, 556 U.S. at 678.  Accordingly, the Court concludes that Plaintiffs fail to state a claim for municipal liability.  Count Six is respectfully **DISMISSED without prejudice**.

## VI.    Count Seven:  Equal Protection

Count Seven asserts a Fourteenth Amendment equal protection claim under § 1983 against Deputy Chief Garcia, Corporal Vaughn, and the Trooper Defendants.  The Fourteenth Amendment's Equal Protection Clause provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "[C]laims asserting selective enforcement of a law on the basis of race are

properly brought under the Equal Protection Clause, and . . . the right to equal protection may be violated even if the actions of the police are acceptable under the Fourth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1166 (10th Cir. 2003) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)). However, these claims are held to a "high standard" because a law enforcement officer's conduct is presumed to be constitutional absent "clear evidence to the contrary." *Id.* at 1167 (quoting *United States v. Armstrong*, 517 U.S. 456, 465 (1996)).

In *Marshall*, the Tenth Circuit explained that "[t]he requirements for a claim of racially selective law enforcement draw on what the Supreme Court has called 'ordinary equal protection standards.'" *Id.* at 1168 (quoting *Armstrong*, 517 U.S. at 465). "The plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose." *Id.* (citing *Armstrong*, 517 U.S. at 465 ("The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision.")). To show discriminatory effect, as with any Equal Protection claim, "a plaintiff must allege facts showing that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class." *Est. of Israel v. City & Cnty. of Denver*, 643 F. Supp. 3d 1221, 1240 (D. Colo. 2022) (citing *SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012); *see also Armstrong*, 517 U.S. at 465 ("To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted."). To show a discriminatory purpose, a plaintiff may point to direct evidence of an officer's discriminatory motive or statistical comparisons of law enforcement across different racial or ethnic groups. *Marshall*, 345 F.3d at 1168; *see also Armstrong*, 517 U.S. at 469–70.

Both the City and Trooper Defendants argue that Plaintiffs' equal protection claim fails because Plaintiffs were not similarly situated to Ms. Apodaca. [Doc. 37 at 15–16; Doc. 42 at 22–24]. A plaintiff is "similarly situated" to other individuals "only if they are alike in all relevant respects." *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quotation omitted); *see also Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) ("To be 'similarly situated' the individuals 'must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed.'" (quoting *United States v. Moore*, 543 F.3d 891, 897–98 (7th Cir. 2008))).

The Court finds that Plaintiffs have failed to allege sufficient facts for a factfinder to conclude that Ms. Apodaca was similarly situated to Mr. Shash or Ms. Gallegos.[9] Plaintiffs allege that Trooper Chavez and Corporal Vaughn smelled alcohol on Mr. Shash but not Ms. Apodaca. [Doc. 18 at ¶¶ 38, 43]. Plaintiffs further allege that Corporal Vaughn told Trooper Chavez that Mr. Shash's eyes looked watery, and Trooper Chavez told Mr. Shash that he was "getting a little bit of impairment off of [Mr. Shash]." [*Id.* at ¶¶ 38, 41]. Although Plaintiffs allege that Trooper Foster later found "prescription drugs and energy drinks" in Ms. Apodaca's car, there is no allegation that any Defendant detected any sign of intoxication from Ms. Apodaca. [*Id.* at ¶ 40]. And while Ms. Apodaca may have been guilty of a traffic violation, [*id.* at ¶¶ 29–30, 34], Plaintiffs do not allege that she "could have been, but was not, stopped or arrested for the offense for which [Mr. Shash] was

---

[9] The Court assumes without deciding that Deputy Chief Garcia, Corporal Vaughn, and the Trooper Defendants were aware that Mr. Shash and Ms. Gallegos are Native American and Ms. Apodaca is "White Hispanic." [Doc. 18 at ¶¶ 2–3].

stopped or arrested," *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006) (cleaned up).[10]  Thus, for purposes of the officers' investigation and arrest of Mr. Shash for DUI, the fact that they observed signs of intoxication only from Mr. Shash means that Plaintiffs have not sufficiently averred facts that he and Ms. Apodaca were "alike in all relevant respects."  *Requena*, 893 F.4th at 1210; *see A.M. v. Holmes*, 830 F.3d 1123, 1168 (10th Cir. 2016) (finding plaintiff was not similarly situated to other students for purposes of school officials' drug search where, unlike other students, plaintiff "possessed a bandana that possibly suggested gang affiliation, a belt buckle that suggested interest in marijuana, [and] an unusually large amount of cash").  The allegations with respect to Ms. Gallegos are also distinguishable from Ms. Apodaca, because Ms. Gallegos was not a driver and there was no sign that Ms. Gallegos had caused the accident.  *Cf. Handy v. Fisher*, No. 18-cv-00789-RBJ-SKC, 2019 WL 1375677, at *5 (D. Colo. Mar. 27, 2019) (finding Black male passenger sitting in front seat was not similarly situated to white female passenger sitting in back seat where officers asked only the Black passenger to provide identification).

Because Plaintiffs have not alleged disparate treatment of similarly situated individuals, the Court finds that Plaintiffs fail to adequately allege discriminatory effect. *Marshall*, 345 F.3d at 1168.  Count Seven therefore fails to state a claim, and the Court therefore need not reach whether Plaintiffs adequately allege discriminatory purpose.

---

[10] *Alcaraz-Arellano* involved a criminal defendant seeking to dismiss an indictment based on a selective enforcement theory.  441 F.3d at 1261–62.  While criminal defendants face a different pleading standard, the definitions of "similarly situated" and "discriminatory effect" remain the same for both criminal defendants and civil plaintiffs.  *See id.* (first citing *Armstrong*, 517 U.S. at 465; and then citing *Marshall*, 345 F.3d at 1168).

Accordingly, the City's Motion and Troopers' Motion are **GRANTED** as to Count Seven, and Count Seven is **DISMISSED without prejudice**.

## VII.    Count Eight:  Fabrication of Evidence

The City and Trooper Defendants argue that Count Eight, the fabrication of evidence claim, should be dismissed as to Corporal Vaughn, Deputy Chief Garcia, and Trooper Foster.  [Doc. 37 at 23; Doc. 42 at 23–25].  They also argue that, insofar as Ms. Gallegos asserts a fabrication of evidence claim, it should be dismissed entirely.  Plaintiffs concede that Count Eight should be dismissed with respect to Ms. Gallegos and Trooper Foster.  [Doc. 48 at 3, 14].  Accordingly, Count Eight is **DISMISSED without prejudice** to the extent that (1) Ms. Gallegos asserts a fabrication of evidence claim against any Defendant and (2) Mr. Shash asserts a claim against Trooper Foster.  Because the Trooper Defendants do not argue that Mr. Shash fails to state a due process claim against Trooper Chavez, the Court proceeds to the adequacy of Mr. Shash's allegations against Corporal Vaughn and Deputy Chief Garcia.

The Fourteenth Amendment's Due Process Clause includes a "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer." *Truman v. Orem City*, 1 F.4th 1227, 1236 (10th Cir. 2021).  To state a due process claim based on the alleged fabrication of evidence, a plaintiff must allege that "(1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt."  *Id.* (footnotes omitted).

A.      Deputy Chief Garcia and Corporal Vaughn

Plaintiffs allege that Deputy Chief Garcia failed to prepare a "written report or complete[] any forms related to his involvement with the investigation." [Doc. 18 at ¶ 53]. They allege that "Corporal Vaughn obscured Defendant Deputy Chief Garcia's involvement in the accident and interaction with the parties by omitting reference to the Deputy Chief's involvement in the accident." [*Id.*]. The City Defendants argue that these allegations fail to satisfy the first and second elements of a fabrication of evidence claim. [Doc. 42 at 24]. Plaintiffs respond that the downplaying and omission of Deputy Chief Garcia's involvement in the accident were "material omissions" that led to unspecified "Defendants deliberately ignor[ing] . . . exculpatory evidence relevant to Plaintiff Shash's innocence, including . . . different statements to different officers." [Doc. 18 at ¶ 128]; *see also* [Doc. 53 at 12–13].

The Court finds that Plaintiffs' allegations fail to state a claim for fabrication of evidence. For the first element, the Tenth Circuit has recognized that omission of exculpatory evidence may constitute a due process violation. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004). But Plaintiffs put forth only conclusory allegations that any evidence of Deputy Chief Garcia's involvement would have shown Mr. Shash's "innocence." [Doc. 18 at ¶ 128]. The vague reference to "different statements to different officers" provides the Court no insight into whether Deputy Chief Garcia or Corporal Vaughn failed to report evidence that would have exculpated Mr. Shash. [*Id.*]. These allegations fall short of the specific factual allegations required to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678.

The Court similarly finds that Plaintiffs fail to allege the evidence was used against Mr. Shash. To state a fabrication of evidence claim, "a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty." *Truman*, 1 F.4th at 1236 (citations omitted). This requirement is generally met when prosecutors use fabricated evidence at trial to secure the plaintiff's conviction. *See Warnick v. Cooley*, 895 F.3d 746, 753 (10th Cir. 2018) (collecting cases). However, "[a]n acquitted plaintiff may have been deprived of liberty due to fabricated evidence if there is a reasonable likelihood that without the fabricated evidence, the plaintiff would not have been criminally charged." *Truman*, 1 F.4th at 1236 n.5. Another court in this Circuit observed that, although *Truman* does not expressly approve due process claims where the plaintiff was charged but not convicted, other circuits have allowed claims where the charges were brought "on the basis of deliberately fabricated evidence" or there is a "reasonable likelihood" that the plaintiff would not have been charged absent the fabricated evidence. *Thayne v. Pleasant Grove City*, No. 2:19-cv-00581-JNP-JCB, 2021 WL 4034180, at *14 (D. Utah Sept. 2, 2021) (first quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001); and then quoting *Black v. Montgomery Cnty.*, 835 F.3d 358, 371 (3d Cir. 2016)).

Here, however, Plaintiffs provide no such allegations. The DUI charge against Mr. Shash was dismissed. [Doc. 18 at ¶ 7]. Plaintiffs argue broadly that Corporal Vaughn's report was "used in the investigation" of Mr. Shash but offer no explanation as to how statements obscuring Deputy Chief Garcia's involvement would be the "basis" of Mr. Shash's DUI charge. [Doc. 53 at 13]; *Thayne*, 2021 WL 4034180, at *14. Instead, Plaintiffs offer only the conclusory assertion that the "omission" of Deputy Chief Garcia's involvement was one of several "false statements and material omissions." [Doc. 18 at

¶ 128].  This does not suffice to show a "reasonable likelihood" that Mr. Shash would not have been charged if Deputy Chief Garcia submitted a report, or if Corporal Vaughn addressed Deputy Chief Garcia's involvement more thoroughly.  *Truman*, 1 F.4th at 1236 n.5; *Thayne*, 2021 WL 4034180, at *14.  The Court concludes that Plaintiffs fail to adequately allege the first two elements of a fabrication of evidence claim, and need not consider the remaining two elements.  Count Eight is respectfully **DISMISSED without prejudice** as to Deputy Chief Garcia and Corporal Vaughn.

## VIII.    State Law Claims

### A.    ELEIA Claims

Plaintiffs assert Counts Nine, Ten, and Twelve under the Enhance Law Enforcement Integrity Act ("ELEIA").  Colo. Rev. Stat. § 13-21-131 (2024).  Colorado enacted ELEIA in 2020 to create a cause of action for individuals whose rights are secured by Article II of the Colorado Constitution (that is, the Colorado Constitution's Bill of Rights) and subsequently violated by a peace officer.  *Id.*; *see also Ditirro v. Sando*, 520 P.2d 1203, 1205 (Colo. App. 2022).  ELEIA allows suit against a peace officer who "subjects or causes to be subjected, including failing to intervene, any other person to the deprivation of any individual rights" secured by the bill of rights in Article II of the Colorado Constitution.  § 13-21-131(1).  However, as Plaintiffs concede, [Doc. 48 at 14], plaintiffs may only bring suit "against individual peace officers, and not against the peace officers' employers."  *Ditirro*, 520 P.3d at 1209.  Plaintiffs assert no other viable grounds[11] for this

---

[11] As State Defendants point out, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, is not an independent grant of subject matter jurisdiction, *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012); *see also* [Doc. 21 at 12–13].  Having concluded that Plaintiffs fail to state a claim against CSP and DOR

Court's jurisdiction over claims against the State Defendants or against Trooper Chavez in his official capacity. *See ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187–88 (10th Cir. 1998) (recognizing that the Eleventh Amendment generally bars claims against state agencies, regardless of the relief requested, and against state officers in their official capacities for money damages), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). Accordingly, Counts Nine and Ten are **DISMISSED without prejudice** as to Trooper Chavez in his official capacity, and Count Twelve is **DISMISSED without prejudice** as to CSP, DOR, and Trooper Chavez in his official capacity. *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1 v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . . must be without prejudice."). The Court turns to the merits of Plaintiffs' ELEIA claims.

### 1.    Wrongful Arrest

The City Defendants seek dismissal of Count Nine insofar as it asserts a wrongful arrest claim against Deputy Chief Garcia and Corporal Vaughn. This claim arises from Article II, section 7 of the Colorado Constitution, which provides in relevant part that "[t]he people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures." The Colorado Supreme Court has observed that Article II, section 7 is "almost identical" to the federal Fourth Amendment. *Colorado v. Rister*, 803 P.2d 483, 489 (Colo. 1990) (en banc). And because § 13-21-131 is similar to § 1983, Colorado courts have looked to § 1983 cases for guidance in § 13-21-131 cases. *Woodall v. Godfrey*, 553 P.3d 249, 256 (Colo. App. 2024) (consulting Fourth Amendment and

---

under RLUIPA or the ELEIA, the Court finds that any claim for declaratory relief against CSP and DOR also fails.

§ 1983 cases in excessive force context).  "In other words, if a plaintiff's allegations could state a claim for relief under § 1983, that suggests the claim could be supported under section 13-21-131, assuming a right embodied in article II of the Colorado Constitution creates a right of action."  *Casper v. Vallario*, No. 23CA0840, 2024 WL 3978459, at *6 (Colo. App. June 27, 2024) (citations omitted).

Plaintiffs' wrongful arrest claim under § 1983 against Corporal Vaughn fails because Plaintiffs do not allege that Corporal Vaughn personally participated in Mr. Shash's wrongful arrest.  *See supra* Part I.  While Count One does not assert a wrongful arrest claim against Deputy Chief Garcia, he appears to have been even less involved in the investigation and arrest than Corporal Vaughn.  *See* [Doc. 18 at ¶¶ 32, 53].  All relevant alleged conversations regarding Mr. Shash's supposed intoxication involved Trooper Chavez and Corporal Vaughn.  [*Id.* at ¶¶ 38, 43].  And Plaintiffs fail to allege that Deputy Chief Garcia believed Trooper Chavez's arrest of Mr. Shash was unconstitutional, that Deputy Chief Garcia had a realistic opportunity to intervene, or that Deputy Chief Garcia was anything more than merely present at the scene.  *Jones*, 809 F.3d at 576; *Novitsky*, 491 F.3d at 1254.

Having concluded that Count Nine fails to allege personal participation, the Court finds that § 1983's personal participation requirement applies to § 13-21-131.  The Tenth Circuit derived the personal participation requirement from § 1983's provision that liability is limited to the official who "subjects, or causes to be subjected," an individual to a constitutional violation.  *See McClelland v. Facteau*, 610 F.2d 693, 695–96 (10th Cir. 1979) (holding that plaintiffs must allege an "affirmative link," or "sufficient causal connection," between defendant's conduct and alleged constitutional violation).  Section

13-21-131 includes identical language, save for its addition that "failing to intervene" amounts to causation. But this does not meaningfully distinguish the two provisions. As explained above, a failure to intervene can constitute personal participation under § 1983. *See Jones*, 809 F.3d at 576. And the Tenth Circuit has long recognized that "the section 1983 language 'subjects, or causes to be subjected' is broader than direct personal involvement; it includes failure to perform a duty if that failure causes deprivation of protected rights." *McClelland*, 610 F.2d at 696. Thus, the parallel language in § 1983 and § 13-21-131, combined with the Colorado Court of Appeals' broad endorsement of applying § 1983 jurisprudence to § 13-21-131 claims, *Casper*, 2024 WL 3978459, at *6, satisfies the Court that § 13-21-131 "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions," *Monroe v. Pape*, 365 U.S. 167, 187 (1961), *overruled in part on other grounds by Monell*, 436 U.S. 658. Because Plaintiffs fail to adequately allege personal participation or a failure to intervene by Corporal Vaughn or Deputy Chief Garcia in Mr. Shash's arrest, the City's Motion is respectfully **GRANTED** as to Count Nine. Count Nine is **DISMISSED without prejudice** insofar as it asserts claims against Corporal Vaughn and Deputy Chief Garcia.

### 2.    Free Exercise

The remaining portion of Count Twelve asserts a free exercise claim against the Trooper Defendants and City Defendants under § 13-21-131 and Article II, section 4 of the Colorado Constitution. *See* [Doc. 18 at 32]. Article II, section 4 provides in relevant part that "the free exercise and enjoyment of religious profession and worship, without discrimination, shall forever hereafter be guaranteed." The Colorado Supreme Court has recognized that Article II, section 4 embodies "the same values of free exercise and

governmental noninvolvement secured by the religious clauses of the First Amendment."
*Ams. United for Separation of Church & State Fund, Inc. v. State*, 648 P.2d 1072, 1081–
82 (Colo. 1982); *see also Conrad v. City & Cnty. of Denver*, 656 P.2d 662, 670–71 (Colo.
1982) ("Because the federal and state constitutional provisions embody similar values,
we look to the body of law that has been developed in the federal courts with respect to
the meaning and application of the First Amendment for useful guidance.").  But while the
Court finds that § 1983 precedent readily applies to a § 13-21-131 wrongful arrest claim,
it reaches a different conclusion as to Plaintiffs' free-exercise claim.  Because the Court
has only supplemental jurisdiction over Count Twelve, the Court deems it appropriate to
decline to exercise subject matter jurisdiction over this claim.

Federal courts exercise supplemental jurisdiction over state law claims when the
state claims "form part of the same case or controversy" as federal claims.  28 U.S.C.
§ 1367(a).  However, supplemental jurisdiction "need not be exercised in every case in
which it is found to exist."  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726
(1966).  The Court has discretion to decline supplemental jurisdiction if, inter alia, a claim
"raises a novel or complex issue of state law."  § 1367(c)(1); *see also Gibbs*, 383 U.S. at
726 ("Needless decisions of state law should be avoided both as a matter of comity and
to promote justice between the parties, by procuring for them a surer-footed reading of
applicable law.").  A novel question of state law may exist where "there is no controlling
precedent on the issue."  *Merrifield v. Bd. of Cnty. Comm'rs*, 654 F.3d 1073, 1085 (10th
Cir. 2011).

As explained above, Plaintiffs' § 1983 free-exercise claim fails because it is not
clearly established that Defendants possessed a level of scienter sufficient to support

40

individual liability for a First Amendment violation. *See supra* Part IV.C. The Parties identified, and the Court's independent research revealed, no decisions by the Colorado Supreme Court or the Colorado Court of Appeals clarifying what elements, including scienter, are required for an ELEIA free-exercise claim. There may be state and federal overlap in the contours of the substantive free exercise right. *See Conrad*, 656 P.2d at 670–71 But that offers the Court little guidance as to what degree of scienter should apply to ELEIA free-exercise claims. And the Court has additional reasons for uncertainty. For one, Colorado's refusal to adopt qualified immunity, § 13-21-131(2)(b), suggests a lower level of scienter may apply. Qualified immunity arose in part from the concern that government officials cannot fairly be held liable for conduct that they could not have reasonably known would be unconstitutional. *Harlow*, 457 U.S. at 818; *see also Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985) ("*Harlow* teaches that officials performing discretionary functions are not subject to suit when such questions are resolved against them only after they have acted."). Colorado's decision to forgo qualified immunity indicates a policy judgment in favor of recovery—that citizens are entitled to hold officers liable for infringing their state constitutional rights, regardless of whether the officer knew at the time that the conduct was unlawful. In light of that legitimate policy judgment, this Court will not assume Colorado courts would agree that a plaintiff asserting an ELEIA claim must show that an officer's alleged violation of his free exercise rights was "conscious," much less "purposeful." *See supra* Part IV.C.

Moreover, even if Colorado courts had signaled that § 1983's scienter standard should apply to ELEIA free-exercise claims, the issue would still be unresolved. As explained above, the Tenth Circuit has left open the question of the precise level of

scienter that applies to § 1983 free-exercise claims.  *See Ralston II*, 2021 WL 3478634, at *7 & n.8.  Given that this Court has declined to answer that question for federal claims, it is even less willing to venture a guess in the state-law context without guidance from Colorado courts.  *See Merrifield*, 654 F.3d at 1085–86 ("An authoritative state court ruling on the novel state-law claim should be permitted, instead of a guess or uncertain prediction by a federal court." (cleaned up)).  The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' § 13-21-131 free-exercise claim.  Accordingly, Count Twelve is **DISMISSED without prejudice.**  *See VR Acquisitions, LLC v. Wasatch City*, 853 F.3d 1142, 1149–50 (10th Cir. 2017) (ordering dismissal without prejudice where district court declined supplemental jurisdiction over state law claims).

### B.    Tort Claims

Counts Eleven, Thirteen, and Fourteen assert tort claims under Colorado law against Corporal Vaughn and the Trooper Defendants.  *See generally* [Doc. 18 at ¶¶ 143–47, 153–63].  The Colorado Governmental Immunity Act ("CGIA") establishes a limited waiver of sovereign immunity for specified tort actions.  Colo. Rev. Stat. §§ 24-10-101 to -120 (2024).  However, the CGIA requires "any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment" to "file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury." § 24-10-109(1).  Filing of a notice is a "jurisdictional prerequisite" to tort claims brought under the CGIA, and "failure of compliance shall forever bar any such action." *Id.*; *Jefferson Cnty. Health Servs. Ass'n v. Feeney*, 974 P.2d 1001, 1002 (Colo. 1998) ("Compliance with this provision is necessary to confer subject matter jurisdiction.").  The City Defendants argue that Plaintiffs failed to file any

notice of injury as to Counts Eleven, Thirteen, and Fourteen. [Doc. 42 at 15–16]. To their

credit, Plaintiffs admit that they failed to file a notice and dismissal is appropriate. [Doc.

53 at 8]. Accordingly, Counts Eleven, Thirteen, and Fourteen are **DISMISSED without**

**prejudice** for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434

F.3d 1213, 1219 (10th Cir. 2006) ("A jurisdictional defect calls for a dismissal without

prejudice.").

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)    The State Defendants' Motion to Dismiss Colorado Department of
        Revenue, Division of Motor Vehicles and Colorado State Patrol, [Doc. 21],
        is respectfully **GRANTED**;

(2)    Jordan Chavez's and J.D. Foster's Motion to Dismiss Amended Complaint
        in Part, [Doc. 37], is respectfully **GRANTED**;

(3)    The City Defendants' Motion to Dismiss Amended Complaint, [Doc. 42], is
        respectfully **GRANTED**;

(4)    All claims against Trooper Chavez in his official capacity are **DISMISSED**
        **without prejudice**;

(5)    Counts One, Two, and Three are **DISMISSED without prejudice** to the
        extent they assert freestanding Fourteenth Amendment claims;

(6)    Count One is **DISMISSED without prejudice** as to Corporal Vaughn and
        Trooper Foster;

(7)    Count Three is **DISMISSED without prejudice** as to Deputy Chief Garcia
        and Defendant Vaughn;

(8)     Count Four is **DISMISSED without prejudice** as to Trooper Foster, the State Defendants, the City Defendants, and to the extent it asserts a RLUIPA claim against Trooper Chavez in his individual capacity;

(9)     Counts Five, Six, Seven, Eleven, Twelve, Thirteen, and Fourteen are **DISMISSED without prejudice**;

(10)    Count Eight is **DISMISSED without prejudice** as to Trooper Foster, Corporal Vaughn, Deputy Chief Garcia, and to the extent Plaintiff Gallegos asserts a claim against any Defendant for fabrication of evidence;

(11)    Count Nine is **DISMISSED without prejudice** as to Corporal Vaughn and Deputy Chief Garcia;

(12)    Plaintiff Shash may proceed on Counts One, Three, Four, and Eight against Trooper Chavez in his individual capacity, and on Counts Two, Nine, and Ten against Trooper Chavez and Trooper Foster in their individual capacities;

(13)    Because no claims remain with respect to Ms. Gallegos, the State Defendants, or the City Defendants, the Clerk of Court is directed to terminate from this action Plaintiff Shiree Gallegos and Defendants City of Pueblo; Colorado State Patrol; Colorado Department of Revenue, Division of Motor Vehicles; Deputy Chief Garcia; and Corporal Vaughn;

(14)    No later than **March 28, 2025**, Plaintiff Shash is **DIRECTED to FILE** a Second Amended Complaint reflecting only the claims remaining in this action pursuant to the rulings made herein, **with no other substantive amendments permitted**; and

(15)    No later than **March 28, 2025**, counsel for the remaining Parties are

**DIRECTED TO CONTACT** the Chambers of the Honorable Martiza

Dominguez Braswell to SET a Scheduling Conference in this matter.


DATED:  March 14, 2025                    BY THE COURT:

                                          _____
                                          Nina Y. Wang
                                          United States District Judge